**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**
**CASE NO. 4:18CV529-MW/CAS**

| | |
|---|---|
| | ) |
| **MICHAEL FOX, et al.,** | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **KEN DETZNER, in his official** | ) |
| **capacity as Florida Secretary of** | ) |
| **State, et al.,** | ) |
| **Defendants.** | ) |

-

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

**BENEDICT P. KUEHNE**
**KUEHNE DAVIS LAW, P.A.**
Miami Tower, Suite 3550
100 S.E. 2nd Street
Miami, FL 33131-2154
Florida Bar No. 233293
Tel: (305) 789-5989
Fax: (305) 789-5987
ben.kuehne@kuehnelaw.com
efiling@kuehnelaw.com

**CARL CHRISTIAN SAUTTER**
3623 Everett Street NW
Washington, DC 20008
Indiana Bar No. 45-53
*Pro Hac Vice to be Sought*
Tel: 202-285-7560
sauttercom@aol.com

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................i

TABLE OF AUTHORITIES....................................................... iii

INTRODUCTION...................................................................... 1

FACTUAL BACKGROUND ...................................................... 5

    I.     Florida's Secretary of State Has Elections Authority. ........... 5

    II.    County Supervisors of Elections Operate Florida Elections. ...................................................................... 6

    III.   Florida's Elections Process in 2018 General Election and Recounts. ............................................................ 7

    IV.   Plaintiffs Are Injured by the Failure to Follow Federal Law Requiring Ballot Preservation. .................................... 16

ARGUMENT ......................................................................... 26

    I.     Plaintiffs Have a Substantial Likelihood of Success on the Merits. .......................................................... 27

         A.    Plaintiffs Are Substantially Likely to Prevail on Their Ballot Image Preservation Claim...................... 27

    II.    Plaintiffs Have a Clear Right to Relief Against the Defendants. ......................................................... 31

    III.   Plaintiffs Are Irreparably Injured Without Any Adequate Remedy at Law. .................................... 34

    IV.   The Balance of Equities Favors the Requested Relief. ........ 35

    V.    The Public Interest Is Furthered. ...................................... 35

CONCLUSION ...................................................................... 36

CERTIFICATE OF SERVICE.................................................38

LIST OF EXHIBITS............................................................39

# TABLE OF AUTHORITIES

**Cases**

*City of Hialeah v. Delgado,*
  963 So. 2d 754 (Fla. 3d DCA 2007) ...................................... 32

*Cort v. Ash,*
  422 U.S 66, 95 S. Ct. 2080 (1975) ........................................ 33

*Holly v. Auld,*
  450 So. 2d 217 (Fla.1984).............................................. 32-33

*Kelley v. Rice,*
  800 So. 2d 247 (Fla. 2d DCA 2001) ...................................... 33

*Schiavo ex rel. Schindler v. Schiavo,*
  403 F.3d 1223 (11th Cir. 2005) ........................................... 27

*Siegel v. LePore,*
  234 F.3d 1163 (11th Cir. 2000) (en banc) ............................. 27

*United States v. Florida,*
  870 F. Supp. 2d 1346 (N.D. Fla. 2012) ................................. 27

*Wesberry v. Sanders,*
  376 U.S. 1 (1964) .............................................................. 36

*Wexler v. Lepore,*
  878 So. 2d 1276 (Fla. 4th DCA), *rev. denied,*
  888 So. 2d 625 (Fla. 2004)............................................32, 33

**Statutes**

42 U.S.C. § 1973 ...................................................................... 34

42 U.S.C. § 1974 ..........................................................25, 29, 33, 34

52 U.S.C § 10301...................................................................... 34

52 U.S.C. § 10701..................................................................... 3

52 U.S.C. §20701.............................................................28, 33, 34

Florida Statutes § 101.545 ......................................................... 3

Florida Statutes § 101.5614 ....................................................9, 11

Florida Statutes § 102.141 ......................................................... 6

Florida Statutes § 102.166 ......................................................... 6

## INTRODUCTION

Plaintiffs seek federal court relief to require Florida voting officials to comply with federal law requiring the preservation of election balloting materials for twenty-two (22) months following a federal election. Despite the plain application of this mandatory requirement to the November 6, 2018 general election that included statewide balloting for the U.S. Senate, the Florida Secretary of State and the Division of Elections have failed in their responsibilities to insure that digital electronic ballot images automatically created by Florida's electronic voting machines are preserved. The county Supervisors of Elections ("SOEs") are not preserving these ballot images, even though the preservation process is relatively simple. For example, the Election Systems & Software ("ES&S") digital scanners used throughout Florida automatically create digital ballot images of each scanned ballot, and enable election officials to preserve these ballot images simply by choosing a setting in the Election Management System (EMS) or by choosing a software setting on each digital voting machine.

Based on information currently available to the plaintiffs, the SOEs in thirty-four (34) Florida counties do not preserve the electronic digital

ballot images, despite the ready availability of the means to preserve the images. By way of just one example, in proceedings before the Broward County Canvassing Board during the 2018 statewide recount, Craig Mendenhall, technical consultant to former SOE Brenda Snipes, accompanied by Supervisor Snipes, testified that Broward County voting machines were set to retain only write-in images, and not all other ballot images. (Plaintiffs' Exhibit 1, Transcript Excerpt of the November 17, 2018 Broward County Canvassing Board, p. 4-5).[1]

With the conclusion of the general election and the ensuing statewide recounts, these electronic ballot images are not being retained or preserved by the Supervisors of Elections or the Secretary of State. As a result, the images created by and residing on the digital scanning voting equipment will be destroyed and unavailable for preservation or retrieval. Once these electronic materials are not preserved following an election, they are removed from the election systems and overwritten by the subsequent use of the voting machinery.

This case only seeks to enforce federal and state laws requiring

---

[1]     The complete transcript of the November 17, 2018 Broward County Canvassing Board is separately filed in the record as a Notice of Filing. That complete transcript is incorporated into this Memorandum.

elections officials to preserve all election materials, including digital ballot images, for a period of 22 months following a federal election, and to require the Florida Secretary of State and Florida Elections Director to instruct all SOEs using digital scan voting equipment to do the same. Preservation of the digital ballot images is required by federal law (52 U.S.C. § 10701) and Florida law and administrative rules (State of Florida General Records Schedule GS3 for Election Records, Item 113, authorized by § 101.545, Florida Statutes).[2] The State of Florida's Voting Systems Standards expressly include the preservation of "any ballot image" for the required 22-month period following an election. (Plaintiffs' Exhibit 27, Florida Voting System Standards, Form DS-DE 101 (1-12-2005), p. 19).

Digital scan voting machines are different from predecessor voting machines, known as optical scanners. Digital voting scanners automatically make a digital image of each ballot as the ballot is fed through the scanner. This ballot image remains on the digital voting machine even if elections officials choose not to "save" the image, until it

---

[2]     The State of Florida General Records Schedule GS3 for Elections Records is attached as Plaintiffs' Exhibit 2.

is written over in another election or affirmatively deleted. Digital voting scanners actually count the digital images, while optical scanners merely count the paper ballots. When a voter's ballot is fed into the digital scan voting machine, the equipment takes a digital image of that ballot and stores it into the machine's memory. A public record is created the moment the ballot is scanned. These digital ballot images are therefore in the chain of custody of the vote, and constitute election materials and public records protected from destruction by federal and state election and public records laws. (Plaintiffs' Exhibit 3, Affidavit of Dr. Thomas W. Ryan; Plaintiffs' Exhibit 4, Affidavit of John R. Brakey; Plaintiffs' Exhibit 5, ES&S Test Plan for EAC VVSG 1.0 Certification Testing (4/6/2018); Plaintiffs' Exhibit 6, Ballot Image Information on ES&S Systems, Issued 11/1/2018).[3]

---

[3] Plaintiffs' Exhibit #5, The Test Plan for EAC VVSG 1,0 Certification Testing, details and describes the procedures utilized for testing the ES&S Electronic Voting System, including the DS200 and DS850 equipment, for compliance with the requirements for voting systems in the U.S. Election Assistance Commission ("EAC") 2005 Voluntary Voting System Guidelines ("VVSG"). ES&S submitted its voting system for testing to the EAC for certification. Page 2 of the Test Plan provides an overview of the DS200 and DS850 machines. Plaintiffs' Exhibit #6, Ballot Image Information on ES&S Systems, explains that

Preliminary injunctive relief is needed during the pendency of this litigation because the non-preservation of these ballot materials cannot be cured once destruction or overwriting has begun. Once destroyed, the images cannot be recovered.

Preliminary injunctive relief does not cause any financial or other injury or damage to the defendants because the process of preserving the ballot images is simple and the cost of preservation and storage is negligible. The SOEs routinely and automatically save and download election materials onto their servers. Despite the ready availability of the digital images on the voting machines and the ease of compliance with the manufacturer's instructions for preservation, Florida's elections officials are in the process of allowing these records to be destroyed.

## FACTUAL BACKGROUND

### I.    Florida's Secretary of State Has Elections Authority.

Defendant Ken Detzner as Florida Secretary of State is the chief election officer for the State of Florida. Amended Complaint ¶2. Defendant Maria Matthews as Director of the Florida Division of

---

the digital scanners used throughout Florida automatically capture a digital image of each ballot, which image is then ready to be written to the internal USB media.

Elections is responsible for the oversight of Florida's elections. Amended Complaint ¶2; Fla. Stat. §§ 102.141, 102.166. These officials have not carried out their duties to instruct Florida's Supervisors of Elections to preserve all ballot materials for twenty-two (22 months) following a federal election. These officials have failed to accurately instruct SOEs to preserve digital ballot images created by digital voting machines used throughout the State of Florida. This failure was evident throughout Florida's mandatory recount for the federal office of United States Senate and two statewide Florida offices.

## II.    County Supervisors of Elections Operate Florida Elections.

Florida's Supervisors of Elections operate the actual elections in each of Florida's sixty-seven (67) counties. Amended Complaint ¶¶19-35. Currently, the SOEs in at least 34 Florida counties are not carrying out their duties to preserve all election materials as required by law. As reflected in the testimony of Craig Mendenhall and then-Broward SOE Brenda Snipes, Broward County only preserves write-in ballot images, and does not preserve all other ballot images, despite the ready availability to do so. (Plaintiffs' Exhibit 1, Transcript Excerpt of 11/17/2018 Broward County Canvassing Board, p. 4-5).

## III. Florida's Elections Process in 2018 General Election and Recounts.

All but three of Florida's sixty-seven counties use digital scan voting equipment. Forty-eight Florida counties use digital scan election equipment manufactured by ES&S. Sixteen Florida counties use digital scan election equipment manufactured by Dominion Voting Systems. The remaining three Florida counties use optical scan voting equipment.

Digital scanners count the digital images of the ballots while optical scanners count the paper ballots. Digital ballot images are a part of the election chain of custody that begins when a voter signs the log or mail ballot envelope enabling the voter to cast a ballot, including when the vote is cast, imaged, and tabulated on the digital scanning machines. This election chain of custody continues through the transfer and storage of all election materials.

ES&S digital scan voting machines provide three options with respect to the handling and preservation of digital ballot images, allowing a selection to save: 1) None; 2) All Processed Images; 3) Processed Write-In Images only. (Plaintiffs' Exhibit 6, Ballot Image Information on ES&S Systems, Issued 11/1/2018); Plaintiffs' Exhibit 24, DS850 Operator's Guide, pp. 86-87). The Save selection is preferably made by merely

selecting a software setting in the EMS or in the software setting on each voting machine. The manufacturer-recommended default setting is Save All Processed Images. As occurred in Broward County, Florida SOEs reset the machines to Save None or Write-In Images only, thus resulting in the non-preservation and ultimate destruction of digital ballot images (Plaintiffs' Exhibit 1, Transcript Excerpt of the 11/17/2018 Broward County Canvassing Board; Plaintiffs' Exhibit 7, Affidavit of Susan Pynchon; Plaintiffs' Exhibit 8, AUDIT USA White Paper on How Digital Ballot Images Are Saved on DS850).

Ballot images are additionally stored internally on the ES&S digital voting machines until such time as they are cleared in preparation for another election. This process overwrites existing ballot images, resulting in the destruction of ballot images from the prior use of the voting machine. (Plaintiffs' Exhibit 1, Transcript Excerpt of the 11/17/2018 Broward County Canvassing Board, pp. 4, 8-9). SOEs in at least thirty-four (34) Florida counties that do not preserve digital ballot images have failed and refused to take the readily available steps to preserve the ballot images stored internally on the voting equipment when preparing the equipment for the next use or the next election.

Instead, these SOEs, constituting the majority of the Florida SOEs, are affirmatively removing and destroying digital images instead of preserving them for the required 22-month post-election period.

Preserving both the voted paper ballots and the digital ballot images is analogous to preserving duplicated ballots made by election officials. As required by Florida elections law, §101.5614(4)(a) & (b), Florida Statutes, when a mail ballot is damaged in the mail or in processing, or cannot be fed through the digital scanner/counting machine, election officials copy the paper ballot and feed the duplicate ballot through the digital scanner machine. Election officials are required to retain both the original and the duplicate ballot (Plaintiffs' Exhibit 9, AUDIT USA White Paper on ES&S System for Auditing and Adjudication; Plaintiffs' Exhibit 10, AUDIT USA White Paper on Dominion Digital Ballot Images Used for Auditing and Adjudication.). That same legal requirement applies to digital ballot images, another part of the elections chain of ballot custody. Florida and federal law allow no exceptions. Election officials may not pick and choose which election materials to preserve.

Based on inquiries made to each Florida SOE, plaintiffs have

confirmed that at least 34 Florida counties using digital scan voting equipment do not preserve ballot images or preserve write-in ballots only. The named defendants are a representative sample of those non-preserving Florida counties. These counties account for well more than 64% of the Florida votes cast in the 2018 general election, including federal races.

At the present time, plaintiffs have so far confirmed that only sixteen (16) Florida counties using digital scan voting equipment actually preserve all ballot images: Sarasota, Manatee, Leon, Collier, Alachua, Walton, Columbia, Hendry, Dixie, Bay, Gilchrist, Hernando, Taylor, Bradford, Volusia, and Wakulla, with Polk and Broward saving write-ins only. Among these jurisdictions, Sarasota, Manatee, Collier, Walton, Hendry, Bay, Volusia, Wakulla, and Bradford use ES&S digital voting equipment, while Leon, Alachua, Columbia, Gilchrist, Hernando, Taylor, and Dixie use the Dominion Voting Systems digital voting equipment.

Digital ballot images are critical for election ballot preservation, auditing, and adjudication purposes. Both ES&S and Dominion affirmatively promote these functions in its literature (Plaintiffs' Exhibit 9 (ES&S); Plaintiffs' Exhibit 10 (Dominion)). In the case of close elections

and those necessitating mandatory recounts, ballot images must be available to be used to verify and confirm results, as well as to identify and possibly expose errors in the counting process and tampering. Transparency and verifiability increase public confidence in the election outcome, and are an intrinsic component of federal and Florida elections requirements. Preservation of digital ballot images, moreover, make it more difficult for the known and ever-present hackers and others to manipulate election results.

Ballot images are essential for administrative review during the canvass and audits to identify anomalies such as miscounts, overvotes, undervotes, or voter errors relating to ballot design, and other audit functions. They also assist when paper ballots have been misplaced, as occurred in the 2018 Broward County recounts. The images allow the examination of ballots without having to violate seals on election materials placed by election workers in compliance with Florida law. Section 101.5614(3), Florida Statutes, authorizes the use of ballot images for the adjudication and counting of write-in votes.

The use of digital ballot images for counting, security, and audits is described in the Audit USA Ballot Image Audit Guide for Candidates and

Campaigns (2018) (Plaintiffs' Exhibit 11). Digital scan voting systems are used to scan paper ballots for counting and preservation purposes, taking a digital image of each ballot that is used to actually count the votes. These digital ballot images are then available to be used to compare the vote totals counted by the voting machines, and for post-election audits.

Sixty-four Florida counties used digital electronic scanner voting machines to count the votes in the November 6, 2018 general election. Those same Florida counties used the same digital electronic equipment for the mandatory statewide recounts. These digital scanners count digital images of the ballots ("digital ballot images") instead of the actual ballots. Thereafter, digital ballot images enter the voting chain of custody and are public records required to be preserved under Florida and federal law. (Plaintiffs' Exhibit 3, Affidavit of Dr. Thomas Ryan).

In previous elections, continuing through the November 6, 2018 general election, and into the mandatory statewide recounts, the named defendants and the other SOEs in Florida instructed or allowed election officials and staff to refrain from preserving and thereby destroying digital ballot images following the election. These actions and inaction of the responsible elections officials are in conflict with the affirmative duty

under federal law requiring elections officials to preserve digital ballot images. Federal law requires the retention of all records and papers relating to any application, registration, payment of poll tax, or other requisite to voting in such elections, including ballots. Digital ballot images must be preserved under federal law because they are the actual record used for tabulating election results (Plaintiffs' Exhibit 3, Affidavit of Dr. Thomas Ryan).

On October 19, 2018, plaintiffs' counsel sent a letter to defendant Florida Secretary of State Ken Detzner requesting that he and defendant Florida Director of Elections Maria Matthews "instruct the election supervisors in each of Florida's counties using the ES&S DS200 and/or the DS850 or any equivalent digital voting equipment…of their obligation to preserve all ballot images." (Plaintiffs' Exhibit 12, Attorney Benedict P. Kuehne 10/19/2018 letter to SOS Ken Detzner). Plaintiffs' counsel followed that letter with a telephone conversation with Department of State Acting General Counsel Brad R. McVay. On October 31, Mr. McVay emailed plaintiffs' counsel stating the intention of the Division of Elections to "issu[e] a communication to the SOEs this morning." (Plaintiffs' Exhibit 13). Later that day, defendant Florida

Elections Director Matthews sent an email to all Florida SOEs entitled "Reminders for Upcoming Elections." (Plaintiffs' Exhibit 14), including:

**Public Records**

As a public records custodian, you are responsible for the records you/your office obtain or create. Remember that not only does the General Elections Retentions Schedule GS-3 govern your management, retention, and disposition, but retention of records are also governed by federal law including but not limited to the law governing the retention and preservation of "records and papers which come into [your] possession relating to any application, registration…or other act requisite to voting in such election." See also 52 U.S.C 20701.

(Plaintiffs' Exhibit 14, p. 3).

On November 1, 2018, defendant Matthews sent a "clarification" memo reading, in pertinent part:

"…we are not asking you to undo or reprogram machines that have been prepped and already used in this Election."

(Plaintiffs' Exhibit 15). The effect of this "clarification" was to affirmatively allow Florida SOEs to refrain from requiring the preservation of digital ballot images if the voting equipment was not already set to preserve these images, even though preservation does not require any programming and does not alter or adversely impact the elections process. Paul Lux, the Okaloosa County SOE and President of the Florida State Association of Supervisors of Elections, incorrectly

[14]

asserted on November 1, 2018, that the digital elections systems do not automatically create ballot images. (Plaintiffs' Exhibit 16, Paul Lux Email to Director Matthews, November 1, 2018). The Association's Executive Director, Ronald Labasky, also asserted, incorrectly, in his November 1, 2018 Memorandum to all Florida SOEs that the ES&S systems do not automatically create ballot images. (Plaintiffs' Exhibit 17, Ronald Labasky Memorandum to Florida Supervisors of Elections re: Public Records Request/Ballot Images, November 1, 2018). Both statements are flatly contrary to the functionality and operation of the digital scanners that automatically create a digital image of each ballot scanned. (Plaintiffs' Exhibit 6, Ballot Image Information on ES&S Systems; Plaintiffs' Exhibit 24, DS850 Operator's Guide, p. 2). ES&S documentation plainly shows that a ballot image is automatically created at the moment the ballot is scanned. (Plaintiffs' Exhibit 27, AUDIT USA White Paper on Automatic Generation of Ballot Images by Digital Ballot Scanners) The failure of the SOEs to "save" the automatically-created images constitutes the failure to preserve ballot materials required by

federal and state law.[4]

The effect of the statewide defendants' instructions and the implementation of the SOEs was that digital ballot images have not been preserved for the 2018 general and recount elections, contrary to federal and state law. Florida and county election officials thereupon failed to preserve and actually destroyed digital ballot images following the election. The elections defendants have violated and will continue to violate federal and state election records laws by their ongoing failure to instruct election officials and staff to preserve all digital ballot images following the election. Without the preservation of digital ballot images, plaintiffs' rights to a fair and accurate election guaranteed by federal law have been violated and will continue to be violated.

## IV. Plaintiffs Are Injured by the Failure to Follow Federal Law Requiring Ballot Preservation.

Plaintiff Susan Pynchon resides in Volusia County, Sixth

---

[4] "The [ES&S] system captures and retains digital images and cast vote records of every scanned ballot for auditing and adjudication. ES&S does not alter a single retained and captured digital image." https://www.elections.virginia.gov/Files/CastYourBallot/VotingSystems/ VotingEquipReport/proposals/ESSProposal.pdf, attached as Plaintiffs' Exhibit 18, Enhancing the Election Process for the Commonwealth of Virginia (April 7, 2015).

Congressional District, Florida. Ms. Pynchon has made numerous public records requests to Florida counties using digital scan voting equipment. Together with other plaintiffs, she has received responses from as many as thirty-four (34) Florida SOEs confirming the non-preservation of digital ballot images, or preservation of write-in ballots only. (Plaintiffs' Exhibit 7, Affidavit of Susan Pynchon).

Plaintiff James Shawn Hunter is a lawyer residing in Orange County, Seventh Congressional District, Florida. Mr. Hunter personally contacted several Florida SOEs that use digital scan voting equipment, and received admissions from four (4) Florida counties that they do not preserve ballot images. (Plaintiffs' Exhibit 19, Affidavit of James Hunter).

Plaintiff Nathan Gant resides in Seminole County, Seventh Congressional District, Florida. Mr. Gant personally contacted several Florida counties that use digital scan voting equipment, and received admissions from three (3) Florida SOEs that they do not preserve ballot images. (Plaintiffs' Exhibit 20, Affidavit of Nathan Gant).

Plaintiff Michael D. Fox, a Pinellas County registered voter, was informed by the Pinellas County Supervisor of Elections office that

Pinellas County does not preserve ballot images, with the exception of write-in ballots. (Plaintiffs' Exhibit 21, Affidavit of Michael D. Fox). Plaintiff Gregory Nason, registered to vote in Citrus County, learned from Citrus County Supervisor of Elections Susan Gill that only paper ballots are preserved after an election. (Plaintiffs' Exhibit 22, Affidavit of Gregory Nason). Plaintiff Jeffrey Richards, who votes in Florida's 14th Congressional District in Hillsborough County, received a communication from Hillsborough County Supervisor of Elections Communications Director Geri Kramer that Hillsborough County does not maintain digital copies of ballots. (Plaintiffs" Exhibit 23, Affidavit of Jeffrey Richards).

John Brakey is an experienced and nationally known elections investigator and transparency activist. He has worked in the field of elections transparency for fourteen (14) years. He investigated dozens of elections throughout the United States and inspected voting equipment all over the country. He leads Americans United for Democracy, Integrity & Transparency in Elections (AUDIT-USA), a non-governmental organization comprised of people working to ensure that voting equipment and vote counting protocols are not vulnerable to

manipulation and that the official election outcomes accurately reflect the will of the people who cast ballots. He has substantial experience observing systems, in particular the operations of the DS200 and DS850 voting machines manufactured by ES&S that are used in the vast majority of Florida counties. In addition, he has studied the ES&S operating manuals for these digital voting machines. He is a participant in efforts to preserve all digital ballot images in Florida and to require that Florida and county officials comply with federal and state law requiring the preservation of all election materials related to the November 6, 2018 Florida general election and mandatory recounts. (Plaintiffs' Exhibit 4, Affidavit of John Brakey).

John Brakey traveled to Florida in mid-September 2018, for the purpose of participating as a speaker at an elections forum in Hollywood, Florida on September 17, 2018. While in Florida, Mr. Brakey personally visited several Florida counties that use the ES&S digital scan voting equipment. In the process of observing voting activities, Mr. Brakey met with SOEs and staff in three (3) counties, two (2) of whom (the Miami-Dade and Lee SOEs) confirmed they do not preserve digital ballot images. (Plaintiffs' Exhibit 4, Affidavit of John Brakey).

Thomas W. Ryan holds a Ph.D in Electrical Engineering from the University of Arizona. He has more than thirty (30) years of experience with digital image creation, processing, and interpretation. He has more than sixteen (16) years of experience with election systems in Pima County, Arizona, a county that uses digital elections scanners, including those manufactured by the same manufacturer of Florida's electronic voting equipment. For more than nine (9) years, Dr. Ryan served as a member of the Pima County Election Integrity Commission, an official appointment from the Pima County Board of Supervisors, including service as Chair for four (4) years (Plaintiffs' Exhibit 3, Affidavit of Dr. Thomas).

As detailed by Dr. Ryan, Pima County, Arizona acquired a new central count election tabulation system in 2015. Dr. Ryan participated in the creation of the State of Work as part of the Request for Proposal prior to the procurement of this electronic voting system. The system installed in Pima County was purchased from ES&S, a vendor that provides equipment and services to many jurisdictions across the United States, including Florida. This election system included DS850 central count ballot scanners, the EMS Server and Client software, and the

Election Reporting Manager (ERM) software, version EVS 5.2.0.0. This is typical of election systems used in many states, including most of Florida' counties that have purchased ES&S voting equipment. (Plaintiffs' Exhibit 3, Affidavit of Dr. Thomas Ryan).

The DS850 is a state-of-the-art digital scanning ballot counter designed for use at a central count facility. The machine receives a stack of paper ballots, processes them one by one, and places them in one of three output bins: counted, write-in, and uncounted (to be reviewed and rescanned). The system begins the counting process by creating a digital image of the paper ballot. All subsequent processing is based on interpretation of the digital ballot by internal software. The digital image is an essential intermediate product of the DS850 in the voting process. The interpretation of each digital ballot image occurs rapidly (approximately 0.2 seconds per ballot), allowing the ballots to be immediately sorted into the three output bins. The digital image is binary (black and white) and scanned at a spatial resolution of 200dpi. The DS850 stores the ballot images and the image interpretations internally as separate files. An image and its interpretation are given the same name but different file extensions to ease retrieval of both ballot images

and the corresponding interpretation. The interpretation of a ballot image is known as a Cast Vote Record (CVR). (Plaintiffs' Exhibit 3, Affidavit of Dr. Thomas Ryan).

Each DS850 machine has a storage capacity of one terabyte (1TB). The images are stored in a compressed format, so the storage capacity of each scanner is more than 20 million ballot images and their corresponding CVR. As a result, storing ballot images on a scanner during the ballot count is neither difficult nor problematic. And the storage does not cost any SOE additional money. The DS850 provides an easy-to-access configuration menu with a "Ballot Images" option. This option enables the operator to determine which images, if any, are exported to the server and preserved. The user-operator can select whether all images, only images with write-in votes, or no images are exported together with the CVRs. The DS850 also allows images to remain on the machine, while exporting only the CVRs. The images can be transferred to the server (EMS) for retention after Election Day. The votes/ballots represented by the collection of CVRs are accumulated to create vote totals for each candidate and issue represented on the ballot. The reporting software uses these tabulation figures to create election

summaries that are subsequently certified by local officials during the canvass. (Plaintiffs' Exhibit 3, Affidavit of Dr. Thomas Ryan).

Prior to the advent of electronic digital scanning elections machinery, many elections jurisdictions used "mark-sense" scanners that detected votes directly from paper ballots. With a digital scanning system, the paper ballots are only used to create images or to support post-election auditing as required by some jurisdictions. The digital ballot images are an essential component for system diagnostics. If errors or discrepancies are discovered during the counting, recounting, or post-election process, including audits, the digital images are used to determine the accuracy of the voting and to identify the source of errors. Whether caused by a faulty scanner, subsequent software bugs, or other external reasons, access to the digital images helps to pinpoint the source of the errors (Plaintiffs' Exhibit 3, Affidavit of Dr. Thomas Ryan).

Ballot images support ballot adjudication, such as the recording of write-in votes and conducting an analysis of questioned ballot interpretation. Digital ballot images are used to facilitate what could otherwise be a tedious and time-impacting operation, making the process both highly efficient and expedited. Ballot images have been declared

public records that must be saved as long as the original paper ballots are retained. Some jurisdictions release ballot images to the public on request. Dr. Ryan opined that digital ballot images created by digital election scanners are critical productions that must be retained in the same manner that paper ballots are retained after each election. He further opined that deleting digital ballot images significantly undermines the integrity of any election system that derives its tabulation data from those images. Further, according to Dr. Ryan, with today's technology and cost-efficient storage media, there is no valid reason to delete the digital ballot images (Plaintiffs' Exhibit 3, Affidavit of Dr. Thomas Ryan; Plaintiffs' Exhibit 9, AUDIT USA White Paper on ES&S System for Auditing and Adjudication; Plaintiffs' Exhibit #10, AUDIT USA White Paper on Dominion Digital Ballot Images Used for Auditing and Adjudication.).

The ES&S DS850 Operator's Guide, attached as Plaintiffs' Exhibit 24, demonstrates that digital ballot equipment creates ballot images with ample storage space to preserve the ballot images. Ballot images can also be archived and need not to be deleted for any election or storage related reason. (Plaintiffs' Exhibit 24, DS850 Operator's Guide). The manual

further includes a reference to the DS850's accuracy as meeting the requirements of the Voluntary Voting Systems Guidelines ("VVSG") promulgated by the U.S. Election Assistance Commission (Plaintiffs' Exhibit #24, DS850 Operator's Guide, p. 2; Plaintiffs' Exhibit #5, p. 1, ES&S Test Plan for EAC VVSG 1.0 Certification Testing (4/6/2018)). Similarly, ES&S documentation verifies that the DS200 is compliant with those same VVSG standards. (Plaintiffs' Exhibit 25, ES&S Quick Start Guide for Voters DS200 Digital Image Scanner).[5]

The ES&S Voting System Functionality Description states:[6]

> United States Code Title 42, Sections 1974 through 1974e state that election administrators shall preserve for 22 months "all records and paper that came into (their) possession relating to an application, registration, payment of poll tax, or other act requisite to voting." This retention requirement applies to systems that will be used at any time for voting of candidates for federal offices (e.g., Member of Congress, United State Senator, and/or Presidential Elector).

---

[5] The ES&S Quick Start Guide is also reproduced in Plaintiffs' Exhibit #9.

[6] The ES&S document titled "System Functionality Description" on data retention, page 54 ("2.1.10 Data Retention") is posted on the Colorado Secretary of State website: https://www.sos.state.co.us/pubs/elections/VotingSystems/systemsDocu mentation/ESS/EVS5203-C-D-0200-SFD.pdf. This document is Plaintiffs' Exhibit #26, ES&S Voting System Functionality Description 5.2.0.3. The document is a standard ES&S publication widely distributed and made available to every ES&S jurisdiction, including the State of Florida.

Therefore, all voting systems shall provide for maintaining the integrity of voting and audit data during an election and for a period of at least 22 months thereafter.

"Because the purpose of this law is to assist the federal government in discharging its law enforcement responsibilities in connection with civil rights and elections crimes, its scope must be interpreted in keeping with that objective. The appropriate state or local authority must preserve all records that may be relevant to the detection and prosecution of federal civil rights or election crimes for the 22-month federal retention period, if the records were generated in connection with an election that was held in whole or in part to select federal candidates. It is important to note that Section 1974 does not require that election officials generate any specific type or classification of election record. **However, if a record is generated**, Section 1974 comes into force and the appropriate authority must retain the records for 22 months." (emphasis added).

## ARGUMENT

Plaintiffs seek a preliminary injunction pursuant to Fed. R. Civ. P. 65 to prevent Florida's elections officials from failing to preserve and from destroying digital ballot images of the 2018 general election and all subsequent elections, in order to promote compliance with federal and state elections records requirements.

In order to obtain a preliminary injunction, a plaintiff must establish (1) a substantial likelihood of success on the merits, (2) an irreparable injury absent issuance of the injunction is likely or probable, (3) that the threatened injury outweighs whatever damage the

proposed injunction may cause a defendant, and (4) that the injunction will not be adverse to the public interest. *United States v. Florida*, 870 F. Supp. 2d 1346, 1348 (N.D. Fla. 2012) (citing *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (*en banc*)). "The purpose of a temporary restraining order, like a preliminary injunction, is to protect against irreparable injury and preserve the status quo until the district court renders a meaningful decision on the merits." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1231 (11th Cir. 2005). To that end, a "substantial likelihood of success on the merits" requires "only *likely* or probable, rather than *certain*, success." *Id.* at 1232.

## I.   Plaintiffs Have a Substantial Likelihood of Success on the Merits.

### A.   Plaintiffs Are Substantially Likely to Prevail on Their Ballot Image Preservation Claim.

Defendant Ken Detzner is Florida's Secretary of State appointed by the Governor. In that official capacity, Secretary Detzner has the duty to follow and enforce federal and state law pertaining to elections, including the preservation of digital ballot images created by voting equipment used in the State of Florida.

Defendant Maria Mathews is the Division Director of Elections within the Florida Department of State. Director Matthews is obliged by

law to follow and implement federal and state law pertaining to elections, including the preservation of digital ballot images created by voting equipment used in the State of Florida.

Defendant Supervisors of Elections are responsible for implementing elections in their respective counties, and have the duty to follow and enforce federal and state laws pertaining to elections, including the preservation of digital ballot images created by voting.

Federal law requires that all records in connection with a federal election must be preserved. Pursuant to 52 U.S.C. §20701 (formerly 42 U.S.C. § 1974):

> Every officer of election shall retain and preserve, for a period of twenty-two months from the date of any general, special, or primary election of which candidates for the office of President, Vice president, presidential elector, Member of the Senate, Member of the House of Representatives, or Resident Commissioner from the Commonwealth of Puerto Rico are voted for, all records and papers which come into his possession relating to any application, registration, payment of poll tax, or any act requisite to voting in such election…

This statute is explained in § 2.1.10 of the 2015 Voluntary Voting System Guidelines ("VVSG") (Volume 1, Version 1.1), promulgated by the

U.S. Election Assistance Commission. The VVSG reads, at p. 24:[7]

     a. United States Code Title 42, Sections 1974 through 1974e state that election administrators shall preserve for 22 months 'all records and paper that came into (their) possession relating to an application, registration, payment of poll tax, or other act requisite to voting.' This retention requirement applies to systems that will be used at any time for voting of candidates for federal office (e.g., Member of Congress, United States Senator, and/or Presidential Elector).

     b. Therefore, all voting systems shall provide for maintaining the integrity of voting and audit data during an election and for a period of at least 22 months thereafter.

Because the purpose of this law is to assist the federal government in discharging its law enforcement responsibilities in connection with civil rights and elections crimes, its scope must be interpreted in keeping with that objective. The appropriate state or local authority must preserve all records that may be relevant to the detection and prosecution of federal civil rights or election crimes for the 22-month federal retention period, if the records were generated in connection with an election that was held in whole or in part to select federal candidates. It is important to note that Section 1974 does not require that election officials generate any specific type or classification of election record. However, if a record is generated, Section 1974 comes into force and the appropriate authority must retain the records for 22 months.

     c. For 22-month document retention, the general rule is that all printed copy records produced by the election database and ballot processing systems shall be so labeled and archived.

---

[7] The Voluntary Voting System Guidelines, promulgated by the U.S. Election Assistance Commission, are reported at https://www.eac.gov/assets/1/28/VVSG.1.1.VOL.1.FINAL1.pdf.

d. Regardless of the system type, all audit trail information … shall be retained in its original format, whether that is real-time logs generated by the system, or manual logs maintained by election personnel.

In accordance with Paragraph d. above, ballot images are part of the "audit trail information." ES&S, in its own literature, promotes ballot images to be used for "auditing." (Plaintiffs' Exhibit 26, p. 7). Hence, state and local authorities must preserve all records that may be relevant to the detection and prosecution of federal civil rights or election crimes for the 22-month federal retention period, if the records were generated in connection with an election that was held in whole or in part to select federal candidates.[8]

Florida election officials are similarly required to preserve ballot images under state law. Chapter 119, Florida Statutes (Florida Public Records Law); Plaintiffs' Exhibit 2, State of Florida General Records Schedule GS3 for Election Records, page 3, Item 113.

The introduction to the State of Florida Records Schedule GS3 for Election Records, Paragraph V, page vii, provides, in part: "Records retention schedules apply to records regardless of their physical format.

---

[8] *Id.*, p. 24.

Therefore, records created or maintained in electronic format [i.e. ballot images] must be retained in accordance with the minimum retention requirements presented in these schedules, whether the electronic records are the record copy or duplicate."[9]

Accordingly, the state and local defendants have a clear legal duty under federal and state law to preserve ballot images during and after an election. Defendant Maria Matthews effectively admits as much in her October 31 "Reminder" memo to SOEs in which she cites the pertinent federal and state laws. (Plaintiffs' Exhibit 14). This directive is consistent with the State of Florida's Voting Systems Standards, attached as Plaintiffs' Exhibit 27, that expressly include the preservation of 'any ballot image" for the required 22-month period following an election:[10]

> The generation of reports by the system shall be performed in a manner, which does not erase or destroy any ballot image, parameter, tabulation or audit log data. The system shall provide a means for assuring the maintenance of data integrity and security for a period of at least 22 months after closing of the polls.

## II.    Plaintiffs Have a Clear Right to Relief Against the

---

[9]     Plaintiffs' Exhibit #2 is located at https://dos.myflorida.com/media/693583/gs03.pdf.

[10]     Plaintiffs' Exhibit #30, Florida Voting System Standards, Form DS-DE 101(1-12-2005), p. 19. The Standards also refer to the "storage of vote images at page 13.

**Defendants.**

In this case, plaintiffs, as Florida voters, have standing to sue. As residents and Florida voters, they are able to seek enforcement of the laws concerning elections matters. *See City of Hialeah v. Delgado*, 963 So. 2d 754, 756 (Fla. 3d DCA 2007).

> ("A voter has standing to challenge ballot language on a claim that the language fails to comply with subsection 101.161(1), Florida Statutes. The First District Court of Appeal has squarely so held. Sancho v. Smith, 830 So.2d 856, 864 (Fla. 1st DCA 2002) ("Citizens who are adversely affected by the exemption in section 101.161(1), Florida Statutes (2000) can make the argument for themselves."). *See also Crawford v. Gilchrist*, 64 Fla. 41, 59 So. 963, 967 (1912) (recognizing standing of Governor as citizen and elector, inter alia, in suit challenging proposed constitutional amendment).

The Florida Fourth District Court of Appeal recognized that standing for purposes of challenging election laws and processes requires a court to determine whether the party challenging the elections process possesses "a sufficient interest at stake in the controversy which will be affected by the outcome of the litigation." *Wexler v. Lepore*, 878 So. 2d 1276, 1280 (Fla. 4th DCA), *rev. denied*, 888 So. 2d 625 (Fla. 2004). The appellate court noted that in matters involving the election laws and procedures, court involvement is ordinarily required when the issue "is a problem which is capable of repetition, yet may evade review. *See Holly*

*v. Auld*, 450 So. 2d 217, 218 (Fla.1984) (mootness does not destroy an appellate court's jurisdiction when questions raised are of great public importance or are likely to recur); *see also Kelley v. Rice*, 800 So. 2d 247, 250 (Fla. 2d DCA 2001) (mootness does not destroy a court's jurisdiction if the question raised is of great public importance or if the error is capable of repetition yet evading review). *Wexler v. Lepore*, 878 So. 2d at 1280.

A private right of action was created by 42 U.S.C. § 1974. In *Cort v. Ash*, 422 U.S 66, 95 S. Ct. 2080 (1975), the U.S. Supreme Court held that plaintiffs may pursue a private right of action provided that (1) the statute creates a federal right in favor of plaintiffs; (2) there is legislative intent creating a right; (3) a private right of action is consistent with the legislative intent; and (4) the cause of action is not one that is traditionally relegated to state law. *Cort*, 422 U.S. at 78, 95 S. Ct. at 2087-88.

Title 42 United States Code Section 1974 (now 52 U.S.C. § 20701) creates a federal right favoring the plaintiffs because the law preserves ballot images for public examination in connection with transparency concerns and election disputes. The statute expresses no intent to deny

such a remedy. A private right of action is consistent with Congress' desire to protect voting rights. *See, e.g.*, 42 U.S.C. Section 1973 (now 52 U.S.C § 10301). Congress has not relegated the protection of voting rights under 52 U.S.C. § 20701 to the states. Therefore, the plaintiffs have a private right of action under 42 U.S.C. § 1974 to compel the preservation of ballot images.

## III. Plaintiffs Are Irreparably Injured Without Any Adequate Remedy at Law.

Absent relief from this court, plaintiffs have no remedy whatsoever to vindicate the federal ballot preservation mandate. Once the digital ballot images are destroyed and not preserved, they are forever lost, depriving plaintiffs of any remedy and creating an irreparable injury to them and to all Florida voters. These are concrete and substantial injuries. And once suffered they cannot be undone. If Florida's elections officials do not take the immediately available efforts to preserve the digital ballot images, the information will be lost. Monetary damages cannot compensate for the loss of the right to vote or participate in an election in which all required election materials are preserved for confirmation, verification, and post-election audit of election results.

## IV.  The Balance of Equities Favors the Requested Relief.

The balance of hardships likewise favors plaintiffs. No Florida elections official is harmed in any meaningful or material way by the requested relief. The preservation of digital ballot images is not only required by law, but also brings meaningful transparency to Florida voters.

## V.  The Public Interest Is Furthered.

The public interest would benefit substantially by the issuance of the requested relief. The actions and inactions of Florida's elections officials in not requiring the preservation of readily available digital ballot images is inimical to concerns about electoral transparency, thereby eroding public trust in our system. The defendants' actions to date have cast doubt on the willingness of Florida elections officials to properly oversee Florida's statewide elections. Preservation of elections materials promotes transparency in the elections process, thereby building voter trust in the election outcomes. Especially in today's environment of voter suspicion and the ever-present assaults on our representative democratic system, the availability of digital ballot images for audits, evaluations, and public review will further the

interests of our participatory democracy and bolster confidence in the integrity of Florida elections. *See Wesberry v. Sanders*, 376 U.S. 1, 17 (1964) ("no right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined.").

## CONCLUSION

For the foregoing reasons, plaintiffs ask this Court to issue judgments and orders granting the following relief:

a.     A judgment or order that digital ballot images are public records;

b.     A preliminary injunction requiring Defendants Detzner and Matthews to instruct local election officials, directors, and registrars that they are required to preserve digital ballot images and associated electronic files of the November 6, 2018 general election, the U.S. Senate recounts, and audits, for twenty-two (22) months and for all elections thereafter;

c.     A preliminary injunction requiring Defendant Supervisors of Elections to preserve all digital ballot images from the November 6, 2018

general election, the 2018 U.S. Senate recounts, and all federal elections thereafter for twenty-two (22) months following a federal election, and to make those images available upon the filing of records requests;

e.　A judgment or order assessing the costs of this action against Defendants;

f.　A judgment or order awarding Plaintiffs their reasonable attorneys' fees, costs, and expenses; and

g.　A judgment or order granting Plaintiffs such other relief that this Court.

Respectfully submitted on December 26, 2018.

<table>
<tr><td>

*S/ Benedict P. Kuehne*
**BENEDICT P. KUEHNE**
**KUEHNE DAVIS LAW, P.A.**
Miami Tower, Suite 3550
100 S.E. 2nd Street
Miami, FL 33131-2154
Florida Bar No. 233293
Tel: (305) 789-5989
Fax: (305) 789-5987
ben.kuehne@kuehnelaw.com
efiling@kuehnelaw.com

</td><td>

*S/ Carl Christian Sautter*
**CARL CHRISTIAN SAUTTER**
3623 Everett Street NW
Washington, DC 20008
Indiana Bar No. 45-53
*Pro Hac Vice to be Sought*
Tel: 202-285-7560
sauttercom@aol.com

</td></tr>
</table>

## CERTIFICATE OF SERVICE

I certify that on December 26, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the CM/ECF and transmitted in accordance with CM/ECF requirements.

<div style="text-align: right">

*S/ Benedict P. Kuehne*
**BENEDICT P. KUEHNE**

</div>

# <u>LIST OF EXHIBITS</u>

1.  Transcript Excerpt of the November 17, 2018 Broward County Canvassing Board.

2.  State of Florida General Records Schedule GS3 for Elections Records, https://dos.myflorida.com/ media/693583/gs03.pdf.

3.  Affidavit of Dr. Thomas W. Ryan.

4.  Affidavit of John R. Brakey.

5.  ES&S Test Plan for EAC VVSG 1.0 Certification Testing (4/6/2018).

6.  Ballot Image Information on ES&S Systems, Issued 11/1/2018.

7.  Affidavit of Susan Pynchon.

8.  AUDIT USA White Paper on How Digital Ballot Images are Saved on DS850.

9.  AUDIT USA White Paper on ES&S System for Auditing and Adjudication.

10.  AUDIT USA White Paper on Dominion Digital Ballot Images Used for Auditing and Adjudication.

11.  AUDIT USA Ballot Image Audit Guide for Candidates and Campaigns (2018).

12.  Benedict P. Kuehne October 19, 2018 letter to Florida Secretary of State Ken Detzner.

13.  Brad McVay October 31, 2018 email to Counsel Benedict P. Kuehne and Chris Sautter.

14. Florida Elections Director Maria Matthews October 31, 2018 email to Florida SOEs, "Reminder for Upcoming Elections."

15. Florida Elections Director Maria Matthews November 1, 2018 "clarification memo."

16. Paul Lux Email to Elections Director Maria Matthews. November 1, 2018.

17. Ronald Labasky Memorandum to Florida Supervisors of Elections re: Public Records Request/Ballot Images, November 1, 2018.

18. Enhancing the Election Process for the Commonwealth of Virginia (April 7, 2015), https://www.elections.virginia.gov/Files/CastYourBallot/ VotingSystems/VotingEquipReport/proposals/ESSProposal.pdf.

19. Affidavit of James Shawn Hunter.

20. Affidavit of Nathan Gant.

21. Affidavit of Michael D. Fox.

22. Affidavit of Gregory Nason.

23. Affidavit of Jeffrey M. Richards.

24. DS850 Operator's Guide, ES&S (2/26/2014).

25. ES&S Quick Start Guide for Voters DS200 Digital Image Scanner.

26. ES&S Voting System Functionality Description 5.2.0.3.

27. AUDIT USA White Paper on Automatic Generation of Ballot Images by Digital Ballot Scanners.

28. ES&S Election Systems and Equipment 101 (August 26, 2015).

29.    Florida Division of Elections, Voting System Qualification Test Report *Election Systems & Software, LLC*, EVS Release 4.5.3.0, Version 1 (January 2018).

30.    Florida Voting System Standards, Form DS-DE 101(1-12-2005).