**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

MIKE FOX, *et al.*,

     Plaintiffs,

v.

KEN DETZNER, in his official      Case No.: 4:18-cv-00529-MW-CAS
Capacity as Florida Secretary of
State, *et al.*,

     Defendants.

_____/

## CONSOLIDATED MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

The Supervisor of Election Defendants[1] (collectively, "SOE Defendants")

pursuant to Rules 12(b)(1) and 12(b)(6), Federal Rules of Civil Procedure, move to

dismiss Plaintiffs' Amended Complaint (D.E. 28) on the grounds that: (1) 52 U.S.C.

§ 20701 does not provide for a direct private right of action nor does it create a

federal right for purposes of enforcement via 42 U.S.C. § 1983; (2) this Court lacks

---

[1]     Deborah Clark as Pinellas County Supervisor of Elections; Christopher Anderson as Seminole County Supervisor of Elections; Susan Gill as Citrus County Supervisor of Elections; Peter Antonacci as Broward County Supervisor of Elections; Lori Scott as Brevard County Supervisor of Elections; Chris H. Chambless as Clay County Supervisor of Elections; Alan Hays as Lake County Supervisor of Elections; Vicky Oakes as St. Johns County Supervisor of Elections; Mike Hogan as Duval County Supervisor of Elections; Tommy Doyle as Lee County Supervisor of Elections; Vicki Davis as Martin County Supervisor of Elections; Craig Latimer as Hillsborough County Supervisor of Elections; Bill Cowles as Orange County Supervisor of Elections; Brian E. Corley as Pasco County Supervisor of Elections; and Lori Edwards as Polk County Supervisor of Elections.

original federal question jurisdiction over the SOE Defendants and should decline to exercise supplemental jurisdiction over a purely state law claim; and (3) Plaintiffs lack standing to assert claims against certain SOE Defendants because Plaintiffs are not voters in Congressional Districts within those SOE Defendants' jurisdictions.

## MOTION TO DISMISS

1.    Plaintiffs seek declaratory and injunctive relief against the SOE Defendants on a single claim purportedly arising under 42 U.S.C. § 1983, 52 U.S.C. § 20701, and alleged violations of Chapter 119, Florida Statutes, relating to access to public records.  On the basis of this claim, Plaintiffs assert this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  *See* Amended Complaint ¶ 8.[2]

---

[2]    The second cause of action, purportedly asserted pursuant to the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, appears to be directed solely against the State defendants for alleged failure to direct each SOE Defendant to preserve electronic ballot image copies in the same manner. *See* Amended Complaint ¶ 60.  While the Amended Complaint is not a model of clarity, such a claim could not possibly be asserted against the SOE Defendants because each SOE Defendant's authority extends only within the SOE Defendant's individual county and the Plaintiffs have not alleged that any individual SOE Defendant treated voters within that SOE Defendant's county differently.  Therefore, claims for disparate treatment of any of the voters *within* any given county could not possibly be asserted against a SOE Defendant.  *See Citizen Center v. Gessler,* 770 F.3d 900, 917-19 (10th Cir. 2014) (holding that there can be no Equal Protection Clause claim against county clerks arising from disparate treatment of voters between counties, where all voters in each particular county clerk's jurisdiction were treated alike).

2.     Plaintiffs seek a declaration that "digital ballot images" that are duplicates maintained on electronic tabulation machines utilized by the SOE Defendants are "election materials and counted ballots" as defined by 52 U.S.C. § 20701 and state law.[3]  Amended Complaint, Prayer for Relief (c).

3.     Plaintiffs further seek a permanent injunction be entered against the SOE Defendants mandating they maintain ballot images and associated electronic files for a period of twenty-two (22) months following a federal election.  Amended Complaint, Prayer for Relief (e).

4.     No private right of action exists for alleged violations of 52 U.S.C. § 20701, nor does 52 U.S.C. § 20701 create a federal right for purposes of enforcement via 42 U.S.C. § 1983.  Therefore, Plaintiffs have failed to state a claim under either statute against the SOE Defendants.

5.     Moreover, lacking a federal cause of action, this Court lacks federal subject matter jurisdiction over the only remaining state law claim against the SOE Defendants.

---

[3]     Plaintiffs' use of the term "digital voting machines" in the Amended Complaint is inaccurate and misleading.  It is not in dispute that the vast majority of voters in Florida complete a paper ballot.  These paper ballots are then tabulated by the machines from the paper ballot.  The machines used by the SOE Defendants do not involve an interface where votes are cast through the machine, e.g., "touch screen voting."

6.     The Court should decline to exercise supplemental jurisdiction over the pendant state law claim against the SOE Defendants and dismiss the Amended Complaint as to the SOE Defendants.

7.     Finally, Plaintiffs are not alleged to be voters in any of the Congressional Districts located within the jurisdictions of six SOE Defendants: Defendants Hogan, Davis, Corley, Chambless, Hays, and Scott. Therefore, Plaintiffs lack standing to assert claims against these SOE Defendants.

## **MEMORANDUM IN SUPPORT**

## I.     STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(1) challenges the court's subject-matter jurisdiction. *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). On a Rule 12(b)(1) facial attack, the court evaluates whether the plaintiff "has sufficiently alleged a basis of subject matter jurisdiction" in the complaint and employs standards similar to those governing Rule 12(b)(6) review. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335 (11th Cir. 2013).

Rule 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief may be granted." *See* Fed. R. Civ. P. 12(b)(6). To survive dismissal, a complaint "must contain sufficient factual matter, accepted as true, to

state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quotation marks omitted).[4]

Rule 8 of the Federal Rules of Civil Procedure requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Iqbal*, 556 U.S. at 678 (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Accordingly, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).

Because Plaintiffs premise the subject matter jurisdiction of this Court as to the SOE Defendants solely upon the failed federal claim (Amended Complaint, ¶ 8),

---

[4]    Whether considered under Rule 12(b)(1) or 12(b)(6), dismissal of a complaint is appropriate when no private right of action exists under the federal statute by which the plaintiff purports to assert federal question jurisdiction. *See Board of Trustees of Painesville Township v. City of Painesville, Ohio*, 200 F.3d 396, 399 (6th Cir. 1999) (affirming dismissal of action pursuant to Rules 12(b)(1) and 12(b)(6) for alleged violations of Clean Water Act based on absence of private cause of action); *cf. Arroyo-Torres v. Ponce Federal Bank, F.B.S.*, 918 F.2d 276, 280 (1st Cir. 1990) (affirming dismissal of action based on a lack of private right of action, although commenting dismissal should be pursuant to Rule 12(b)(6) rather than Rule 12(b)(1)).

Plaintiffs fail to meet their burden of establishing subject matter jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (reiterating that the presumption must be "that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction") (internal citation omitted).

## II.    NO PRIVATE RIGHT OF ACTION EXISTS FOR ALLEGED VIOLATIONS OF 52 U.S.C. § 20701.

Whether a statute creates a private cause of action is a question of statutory construction. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979); *Cannon v. Univ. of Chicago*, 441 U.S. 677, 688 (1979). Mere violation of a federal statute and harm to some person "does not automatically give rise to a private cause of action in favor of that person." *Touche Ross*, 442 U.S. at 568 (citing *Cannon*, 441 U.S. at 688).

### A. Congressional Intent Is Required to Create a Private Right of Action.

If the statute in question does not expressly create a private right of action, courts traditionally determined whether a statute nonetheless includes such a private right of action utilizing the four-factor test from *Cort v. Ash*, 422 U.S. 66 (1975): (1) whether the plaintiff is one of the class for whose benefit the statute was enacted; (2) whether some indication exists of legislative intent, explicit or implicit, either to create or to deny a private remedy; (3) whether implying a private right of action is consistent with the underlying purposes of the legislative scheme; and (4) whether

the cause of action is one traditionally relegated to state law, such that it would be inappropriate for the court to infer a cause of action based solely on federal law. *Cort,* 422 U.S. at 78.

However, subsequent Supreme Court decisions elevated the issue of legislative intent to the primary consideration. In *Touche Ross*, the Supreme Court stated that in matters of statutory construction relating to the existence of a private claim, "our task is limited solely to determining whether Congress intended to create the private right of action . . . ." 442 U.S. at 568. While courts still cite to *Cort*'s four-factor test in the decades since *Touche Ross* was decided, courts have consistently treated the issue of Congressional intent as paramount in evaluating whether such a right exists in a federal statute.[5] *Northwest Airlines, Inc. v. Transport Workers Union of Am.*, 451 U.S. 77, 94 (1981) ("[U]nless this congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist."); *see also Love v. Delta Air Lines,* 310 F.3d 1347, 1359-60 (11th Cir. 2002) ("Statutory intent must be the touchstone of our analysis.

---

[5]    In fact, it has been stated that *Touche Ross* effectively overruled *Cort's* four-factor test by elevating the issue of Congressional intent "into the determinative factor, with the other three merely indicative of its presence or absence." *Thompson v. Thompson*, 484 U.S. 174, 189 (1988) (Scalia, J., concurring).

Without it . . . we simply cannot create by implication a private right of action, no matter how socially desirable or otherwise warranted the result may be.").

### B. The Plain Language of 52 U.S.C. § 20701 Indicates a Lack of Intent to Create a Private Right of Action.

The statute at issue, 52 U.S.C. § 20701 (recodified in 2014 from 42 U.S.C. § 1974), neither expressly nor implicitly creates a private right of action. The statute reads, in relevant part:

> Every officer of election shall retain and preserve, for a period of twenty-two months from the date of any general, special, or primary election of which candidates for the office of . . . Member of the Senate, . . . are voted for, all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election . . . . ***Any officer of election or custodian who willfully fails to comply with this section shall be fined not more than $1,000 or imprisoned not more than one year, or both.***

52 U.S.C. § 20701 (emphasis added). The fact that the statute imposes a fine, contains a scienter requirement, and is punishable by imprisonment confirm this statute was intended to be penal in nature. *See U.S. v. Futura, Inc.*, 339 F. Supp. 162, 165 (N.D. Fla. 1972) ("[I]f punishment in the form of a fine is imposed for violation of the statute, as distinguished from a civil remedy, the offense is criminal in nature."). As a criminal statute, the presumption is against the creation of a private right of action. *See Fisher v. Conseco Finance Co.*, No. 3:07cv266, 2007 WL 3012881, *3 (N.D. Fla. Oct. 12, 2007) ("Rarely is there a private right of action

under a criminal statute."); *Rockefeller v. U.S. Court of Appeals Office*, 248 F. Supp. 2d 17, 23 (D.D.C. 2003) (criminal statutes do not convey a private right of action).

The plain language of 52 U.S.C. § 20701 evidences no private cause of action nor an intent to create one. Therefore, under the prevailing *Touche Ross* standard, there is no private cause of action under 52 U.S.C. § 20701.

This is not a case of first impression. In *Bursey v. South Carolina State Election Commission*, the District Court of South Carolina considered this precise question. *Bursey*, No. 3:10-1545, 2010 WL 3938390, at *3 (D.S.C. Oct. 4, 2010). In *Bursey*, a voter sued the South Carolina State Election Commission and its Director for similar relief to that sought here: an injunction against the non-preservation of electronic voting machine records. Considering the issue under the *Touche Ross* analysis, the district court concluded that the same statute (albeit in its earlier codification) provided no private cause of action:

> In this case, § 1974 creates an express remedy and vests the right to enforcement in the Attorney General. The Attorney General may inspect election records and initiate criminal action upon discovery that an election official is not in compliance with the statute's requirements. The creation of this express remedy and vesting of authority to pursue it in a specified official is strong evidence that no private remedy is intended.

*Id.* at *3. So too, here, there is no private remedy intended, and the claim should be dismissed.

Even under the historical *Cort* four-factor analysis, there is no private right of action. Implying a private right of action would be inconsistent with the related statutes within Chapter 207, which expressly provide for only criminal penalties. For example, 52 U.S.C. § 20702 provides for only criminal penalties for a willful failure to comply with Section 20701. Similarly, 52 U.S.C. § 20703 and § 20705 clearly provide for enforcement by the Attorney General, expressly limiting jurisdiction to the United States District Court for the district "in which a demand [by the Attorney General] has been made." 52 U.S.C. § 20705.

The lack of an express private right of action is indicative of an intent not to provide one. When Congress has intended to create a private cause of action, it has done so explicitly. For example, in 52 U.S.C. § 20510, Congress separately described both the right of the Attorney General to enforce Chapter 205 *and* the private right of voters to pursue remedies for violations of Chapter 205. The fact that 52 U.S.C. § 20701 omits an express private right of action while sister statutes provide one is evidence that Congress did not aim to create a private right of action. *See In re Haas*, 48 F.3d 1153, 1156 (11th Cir. 1995) ("Where Congress knows how to say something but chooses not to, its silence is controlling." (citing *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537 (1994)), *abrogated on other grounds by In re Griffith*, 206 F.3d 1389 (11th Cir. 2000).

Finally, the retention of records – particularly public records in the Sunshine State – is a cause of action traditionally relegated to state law. *See* § 257.35, Fla. Stat.; Fla. Admin. Code R. 1B-24.003(1)(a), State of Florida General Records Schedule GS1-SL for State and Local Government Agencies.

### C. Creating a Private Right of Action for Violations of 52 U.S.C. § 20701 Would Thwart the Purpose of Chapter 207.

Reading 52 U.S.C. § 20701 as providing for a private right of action would thwart the intent of this and related sections of Chapter 207. Congress clearly intended that records produced pursuant to Chapter 207 be confidential and private in nature. Pursuant to 52 U.S.C. § 20704, the Attorney General is specifically forbidden from disclosing "any record or paper produced pursuant to this chapter" except to Congress, a government agency, or in a court proceeding. This clearly reflects a Congressional expectation of confidentiality that would be inconsistent with a private right of action under 52 U.S.C. § 20701. *Bursey,* 2010 WL 3938390 at *3 ("Defendants also argue that implying a private cause of action under § 1974 would be inconsistent with the privacy protections of the statute. The court agrees."); *see also Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1345 (N.D. Ga. 2016) (holding that the production of records goes against Congressional intent and concern for privacy and that *only* the Attorney General has a right to inspect them).

**III.  THERE IS NO FEDERAL RIGHT CREATED UNDER 52 U.S.C. § 20701 TO ENFORCE VIA 42 U.S.C. § 1983.**

Section 1983 does not itself create enforceable rights and is merely a mechanism by which individuals may redress deprivation of substantive rights conferred under a federal statute.  *Gonzalez v. Pingree*, 821 F.2d 1526, 1527 (11th Cir. 1987).  The analysis of whether a statute confers an individual right that may be remedied through Section 1983 has certain common elements with the analysis of whether a private right of action exists directly under a federal statue.  *See, e.g.*, *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-86 (2002).

In describing the analysis that a court must utilize in determining whether a federal statute confers an individual right that may be enforced via Section 1983, the United States Supreme Court articulated that "the initial inquiry—determining whether a statute confers any right at all—is no different from the initial inquiry in an implied right of action case, the express purpose of which is to determine whether or not a statute confers rights on a particular class of persons." *Id.* at 284-85 (quotation and alteration omitted).  In the absence of Congress intending to create a new individual right in a statute, "there is no basis for a private suit, whether under § 1983 or under an implied right of action." *Id.* at 286.

The Supreme Court has set forth three prerequisites for a federal statute to confer individual rights enforceable under Section 1983:

> First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

*Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997) (internal citations omitted). The Supreme Court subsequently clarified the first requirement by stating that only "an unambiguously conferred right," as distinguished from mere benefits or interests, is enforceable under Section 1983. *Gonzaga Univ.*, 536 U.S. at 283 ("We now reject the notion that our cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983."); *Blessing*, 520 U.S. at 340 ("In order to seek redress through § 1983 . . . a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*.").

Further, the Supreme Court held that "the question whether Congress . . . intended to create a private right of action is definitively answered in the negative where a statute by its terms grants no private rights to any identifiable class." *Gonzaga Univ.*, 536 U.S. at 283–84 (quotation omitted). For a statute to create private rights, "its text must be phrased in terms of the person benefitted" or must have an "*unmistakable focus* on the benefited class." *Id.* at 284 (quotations omitted). "Statutes that focus on the person regulated rather than the individuals protected

create no implication of an intent to confer rights on a particular class of persons." *Alexander v. Sandoval*, 532 U.S. 275, 289 (2001) (citation omitted).

Applying *Gonzaga University*, the Eleventh Circuit established three factors to weigh in determining whether Congress has created an individual federal right: "whether the statute (1) contains 'rights-creating' language that is individually focused; (2) addresses the needs of individual persons being satisfied instead of having a systemwide or aggregate focus; and (3) lacks an enforcement mechanism through which an aggrieved individual can obtain review." *Arrington v. Helms*, 438 F.3d 1336, 1344 (11th Cir. 2006) (quotation omitted).

Section 20701 has no "rights-creating language." It speaks only to "officers of election" or "custodians" of records. It says nothing of individual rights and focuses only on the person regulated rather than any protected individuals. *Alexander*, 532 U.S. at 289 ("Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons.") (quotation omitted). It does not address "the needs of individual persons being satisfied," but instead has a "systemwide or aggregate focus" – the retention of voting records. *Arrington*, 438 F.3d at 1344. And, as more fully argued above (*see supra* at Section II(B)), the statute lacks a mechanism for enforcement by an individual and only contemplates penal enforcement via a fine or

imprisonment. Accordingly, there is no individual right conferred in 52 U.S.C. § 20701 which provides a basis for Plaintiffs to assert a Section 1983 claim.

## IV. PLAINTIFFS LACK STANDING FOR ANY CLAIM AGAINST SOE DEFENDANTS IN COUNTIES OUTSIDE PLAINTIFFS' CONGRESSIONAL DISTRICTS.

In addition to the foregoing reasons, the claims against Defendant Mike Hogan, Duval County Supervisor of Elections, Vicki Davis, Martin County Supervisor of Elections, Brian E. Corley, Pasco County Supervisor of Elections, Chris H. Chambless, Clay County Supervisor of Elections, Alan Hays, Lake Counter Supervisor of Elections, and Lori Scott, Brevard County Supervisor of Elections should be dismissed for lack of standing because none of the Plaintiffs is alleged to be a voter of a Congressional District within any of these counties. Plaintiffs are allegedly voters in the Sixth, Seventh, Eleventh, Thirteen, Fourteenth, Seventeenth, and Twenty-Third Congressional Districts. *See* Amended Complaint, ¶¶ 10–17. Duval, Martin, Pasco, Clay, Lake, and Brevard Counties lie outside Plaintiffs' Congressional Districts.[6] Therefore, Plaintiffs are not voters in the Congressional Districts of these SOE Defendants and lack standing to assert claims against these SOE Defendants.

---

[6] *See* § 90.202, Fla. Stat. (permitting the Court to take judicial notice of undisputed facts). Current map of Florida Congressional Districts contained in *League of Women Voters of Fla. v. Detzner*, 179 So. 3d 258, 298 n.16 & app. A (Fla. 2015).

In order to establish standing, a litigant must prove "that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "In other words, for a federal court to have authority under the Constitution to settle a dispute, the party before it must seek a remedy for a personal and tangible harm." *Id.* For a plaintiff's injury to be "particularized" it must "affect[] him in a personal and individual way" and he must "possess a direct stake in the outcome of the case." *Id.* at 705 (quotations and citation omitted). A mere "generalized grievance" is insufficient to confer standing. *Id.* at 706. "A litigant raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Hollingsworth*, 570 U.S. at 706 (quoting *Lujan*, 504 U.S. at 573–74); s*ee also Lance v. Coffman*, 549 U.S. 437, 439–42 (2007).

With respect to injury, Plaintiffs allege: "Without the preservation of digital ballots, Plaintiffs' rights to a fair and accurate election are being and will continue to be denied."). *See* Amended Complaint ¶ 55. Plaintiffs have merely alleged a generalized grievance, which is insufficient to allege an Article III injury-in-fact.

Plaintiffs do not and cannot allege that they have been personally and individually affected by or have a direct stake in the outcome of claims against SOE Defendants whose jurisdictions lie outside the Congressional Districts in which Plaintiffs vote. Plaintiffs' claimed "injury" is merely a "generalized grievance" because it claims a common harm to Plaintiffs' and every Florida citizens' interest in what Plaintiffs claim to be the proper application of the law regarding retention of digital ballot images. *See Hollingsworth*, 570 U.S. at 705-06 ("Article III standing is not to be placed in the hands of concerned bystanders, who will use it simply as a vehicle for the vindication of value interests." (quotations omitted)).

Further, Plaintiffs' asserted injury is not "concrete," but rather is merely hypothetical and speculative. As the Supreme Court has explained: "A 'concrete' injury must be 'de facto'; that is, it must actually exist. When we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term—'real,' and not 'abstract.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quotations and citation omitted). Plaintiffs' mere allegation that their "right to a fair and accurate election" is somehow denied by the lack of an electronic copy of a paper ballot that is indisputably being retained by the SOE Defendants is purely hypothetical at best.

Lastly, Plaintiffs cannot show any injury that is "fairly traceable" to the conduct of these specific SOE Defendants. Because Plaintiffs did not vote in

Congressional Districts where these SOE Defendants have jurisdiction, Plaintiffs cannot allege there was a failure to retain a digital image of *their* ballots. Therefore, Plaintiffs' injury (if any) is not the result of any action on the part of these SOE Defendants.

Accordingly, the claims against Defendants Hogan, Davis, Corley, Chambless, Hays, and Scott should be dismissed because Plaintiffs have not alleged that they have suffered a concrete and particularized injury that is fairly traceable to these specific SOE Defendants' conduct and therefore do not have standing to assert their claims.

## V. THE COURT MUST DISCHARGE JURISDICTION AS TO STATE LAW CLAIMS BECAUSE IT NEVER HAD ORIGINAL JURISDICTION.

Because there is neither a private cause of action against the SOE Defendants for alleged violations of 52 U.S.C. § 20701 nor any federal individual right which can be enforced pursuant to 42 U.S.C. § 1983, there are no claims remaining as to the SOE Defendants that would provide this Court with federal question jurisdiction pursuant to 28 U.S.C. § 1331.

### A. There is no Supplemental Jurisdiction when Original Jurisdiction Claims are Insubstantial.

A necessary condition for the exercise of supplemental jurisdiction over pendent state law claims is the substantiality of the federal claims. *See, e.g., United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). If the federal claims are

"obviously frivolous" or "so attenuated and unsubstantial as to be absolutely devoid of merit," a federal court lacks subject-matter jurisdiction over those claims. *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974) (internal quotations and citations omitted).

The only federal claim asserted against the SOE Defendants is one for which (1) no private right of action exists, and (2) no federal individual right is conferred for which a remedy exists pursuant to 42 U.S.C. § 1983. Since the only federal claim asserted against the SOE Defendants meets the standard of insubstantiality, the Court lacks any supplemental jurisdiction over the purely state law claim and the action must be dismissed as to the SOE Defendants. *See, e.g., Decatur Liquors, Inc. v. District of Columbia*, 478 F.3d 360, 363 (D.D.C. 2007) (holding that in the absence of substantiality of federal claims, district court lacked supplemental jurisdiction over local law claims).

## B. There is a General Presumption in Favor of Relinquishment of Pendant Jurisdiction after Dismissal of Federal Claims.

Alternatively, to the extent that the Court determines that the state law claims against the SOE Defendants do not require dismissal for lack of jurisdiction, the Court should still relinquish jurisdiction and dismiss the claims. While dismissal of pendant state claims where a court has jurisdiction is discretionary, the Supreme Court has recognized that "in the usual case in which all federal law claims are eliminated before trial, the balance of factors to be considered under the pendant-jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will

point towards declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

While these four *Carnegie-Mellon* factors are to be considered, the timing of the decision to hear the state claim in many cases is the most significant factor to be considered. "Indeed, if the federal claims are dismissed prior to trial, [*United Mine Workers v.*] *Gibbs* strongly encourages or even requires dismissal of the state claims." *L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 428 (11th Cir. 1984). Even if the Court were to find that some of the *Carnegie-Mellon* factors favor retention of the state law claims against the SOE Defendants, this Court should decline to exercise supplemental jurisdiction over those pendant state law claims because the sole federal claim asserted against the SOE Defendants is being disposed of early in the proceedings.[7]

---

[7] The substance of Plaintiffs' state law claims will not be fully addressed in this Motion to Dismiss. However, it is worth noting that any claim against the SOE Defendants for violations of Florida's public records law predicated on the alleged failure to retain digital ballot image copies when the actual original paper ballots are otherwise maintained is wholly without merit. Plaintiffs' reliance on Item #113 of the Florida Department of State General Records Schedule GS3 for Election Records is misplaced. Schedule GS3 relates to "records of the content of each ballot *cast on an electronic voting system*." Plaintiffs erroneously rely on the records retention schedule that applies to ballots *cast on electronic voting systems*, as opposed to the electronic systems that tabulate votes *cast by paper ballots*, such as those used by the SOE Defendants. These purely state law claims are best addressed by Florida state courts.

## VI. CONCLUSION

Plaintiffs cannot state a cause of action against the SOE Defendants as no private right of action exists for alleged violations of 52 U.S.C. § 20701 nor does it create a federal right for purposes of enforcement via 42 U.S.C. § 1983. Further, Plaintiffs do not have standing for any claim whatsoever against Defendants Hogan, Davis, Corley, Chambliss, Hays, and Scott. The only remaining claim against any the SOE Defendants is an issue of first impression relating only to issues of Florida law over which this Court does not have supplemental jurisdiction. Accordingly, pursuant to Rules 12(b)(1) and 12(b)(6), the SOE Defendants request the Court dismiss the Amended Complaint against them in its entirety.

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 7.1(F) of the Local Rules of the Northern District of Florida, the undersigned certify that the foregoing Memorandum contains 5,187 words (exclusive of the case style and signature block).

## REQUEST FOR ORAL ARGUMENT

Pursuant to Rule 7.1(K) of the Local Rules of the Northern District of Florida, the SOE Defendants respectfully request oral argument on this Motion to Dismiss. Because of the large number of parties in this matter, two (2) hours is requested for argument.

Dated:  February 12, 2019                    Respectfully submitted,


By:  /s/ Ronald A. Labasky                    By:  /s/ René D. Harrod
Ronald A. Labasky, Fla. Bar #206326           René D. Harrod, Fla. Bar #627666
Brewton Plante, P.A.                          Nathaniel Klitsberg, Fla. Bar #307520
215 South Monroe Street, Suite 825            Broward County Attorney's Office
Tallahassee, FL 32301                         115 South Andrews Avenue, Suite 423
Telephone: (850) 222-7718                     Fort Lauderdale, FL 33301
rlabasky@bplawfirm.net                        Telephone: 954-357-7600
                                              rharrod@broward.org
By:  /s/ John T. LaVia                         nklitsberg@broward.org
John T. LaVia, III, Fla. Bar #853666
Gardner, Bist, et. al., P.A.                  *Counsel for Peter Antonacci, Broward*
1300 Thomaswood Drive                         *County Supervisor of Elections*
Tallahassee, FL  32308
Telephone:  (850)385-0070
jlavia@gbwlegal.com


*Counsel for Brian E. Corley, Pasco*
*County Supervisor of Elections, Lori*
*Edwards, Polk County Supervisor of*
*Elections, Bill Cowles, Orange County*
*Supervisor of Elections, Vicky Oakes,*
*St. Johns County Supervisor of*
*Elections, Chris H. Chambless, Clay*
*County Supervisor of Elections*

By: /s/ Michael J. Roper
Michael J. Roper, Fla. Bar #473227
Dale Scott, Fla. Bar #568821
Frank Mari, Fla. Bar #93243
Bell & Roper, P.A.
2707 East Jefferson Street
Orlando, FL 32803
Telephone: (407) 897-5150
mroper@bellroperlaw.com
dscott@bellroperlaw.com
fmari@bellroperlaw.com

*Counsel for Susan Gill, Citrus County Supervisor of Elections and Counsel for Lori Scott, Brevard County Supervisor of Elections*


By: /s/ Wade C. Vose
Wade C. Vose, Fla. Bar #685021
Vose Law Firm LLP
324 W. Morse Blvd.
Winter Park, FL 32789
Telephone: (407) 645-3735
wvose@voselaw.com
cdarcy@voselaw.com
service@voselaw.com

*Counsel for Defendant Christopher Anderson, Seminole County Supervisor of Elections*


By: /s/ Kelly L. Vicari
Kelly L. Vicari, Fla. Bar #88704
Pinellas County Attorney's Office
315 Court Street, 6th Floor
Clearwater, FL 33756
Telephone: (727) 464-3354
kvicari@pinellascounty.org

*Counsel for Deborah Clark, Pinellas County Supervisor of Elections*


By: /s/ Diana Johnson
Diana Johnson, Fla. Bar #69160
Lake County Attorney's Office
315 W. Main Street, Suite 335
P.O. Box 7800
Tavares, FL 32778
Telephone: (352) 343-9787
MMarsh@lakecountyfl.gov
dmjohnson@lakecountyfl.gov

*Counsel for Alan Hays, Lake County Supervisor of Elections*

By:  /s/ Jacob Payne
Jacob Payne, Fla. Bar #639451
Tiffiny Douglas Safi, Fla. Bar #682101
Duval County General Counsel's Office
117 West Duval Street, Suite 480
Jacksonville, FL 32202
Telephone:  (904) 630-1700
TSafi@coj.net
JPayne@coj.net

*Counsel for Mike Hogan, Duval County Supervisor of Elections*

By:  /s/ Nicholas A. Shannin
Nicholas A. Shannin, Fla. Bar #9570
The Shannin Law Office
214 S. Lucerne Circle East, Suite 200
Orlando, FL 32801
Telephone:  (407) 222-9855
nshannin@shanninlaw.com

*Counsel for Bill Cowles, Orange County Supervisor of Elections*

By:  /s/ Elysse A. Elder
Elysse A. Elder, Fla. Bar #98639
Martin County Attorney's Office
2401 SE Monterey Road
Stuart, FL  34996
Telephone:  (772) 288-5925
eelder@martin.fl.us

*Counsel for Vicki Davis, Martin County Supervisor of Elections*

By:  /s/ Thomas B. Hart
Thomas B. Hart, Fla. Bar #754684
Knott Ebelini Hart
1625 Hendry Street, Suite 301
Fort Myers, FL 33901
Telephone:  (239) 334-2722
thart@knott-law.com

*Counsel for Tommy Doyle, Lee County Supervisor of Elections*

By:  /s/ Robert Brazel
Robert Brazel, Fla. Bar #866430
Hillsborough County Attorney's Office
601 E Kennedy Blvd., 27th Floor
Tampa, FL 33602-4932
Telephone:  (813) 272-5670
BrazelR@HillsboroughCounty.org

*Counsel for Craig Latimer, Hillsborough County Supervisor of Elections*