UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

MIKE FOX, et al.,

     Plaintiffs,

v.                        Case No. 4:18-cv-529-MW/CAS

LAUREL M. LEE,[1] in her official
capacity as the Secretary of the
Florida Department of State, et al.,

     Defendants.

_____/

## <u>STATE DEFENDANTS' MOTION TO DISMISS</u>

Defendants, Laurel M. Lee, in her official capacity as the Secretary of the Florida Department of State ("Lee" or "Secretary"), and Maria Matthews, in her official capacity as the Director of the Florida Division of Elections ("Matthews" or "Director") (collectively "State Defendants"), move to dismiss the amended complaint ("Complaint") filed by Plaintiffs, ECF No. 28, and say:

## INTRODUCTION

This is a record retention case, not a voting rights case. Electors have cast votes; the votes have been counted; the votes have been recounted; and winners have been declared. Plaintiffs have not alleged that they were precluded from

_____

[1]     Laurel M. Lee is substituted for Ken Detzner as the new Secretary of the Florida Department of State. <u>See</u> Fed. R. Civ. P. 25(d).

casting votes. They likewise have not alleged that their votes were not counted or weighed equally to other votes or that election results were inaccurate. Instead, Plaintiffs are focused on preserving an electronic record of voted ballots.

Plaintiffs are allegedly registered Florida voters. Defendants consist of two groups of public officials: (i) the Secretary and Director employed by the Florida Department of State ("State Defendants"), and (ii) certain county supervisors of elections ("County Defendants") (collectively "Defendants"). The Secretary is designated as the "chief election officer" for the state. See Fla. Stat. § 97.012. The Director acts at the direction of the Secretary. The County Defendants are independently elected county officials. See Fla. Stat. § 98.015.

In Florida, elections are conducted at the county level by county supervisors of election ("Supervisors"). See Fla. Stat. ch. 101. The Supervisors are the custodians of election records (including ballots and, if applicable, Ballot Images) and are responsible for maintaining election records. See Fla. Stat. §§ 101.545; 119.021. Some counties tabulate votes using digital scanning machines ("Digital Scanners") that function by creating and reading images of voted ballots ("Ballot Images"). Digital Scanners -- depending on the make, model, and settings -- may or may not save Ballot Images. In the 2018 general election ("General Election"), some counties saved Ballot Images; others did not. In either case, however, the Supervisors were required to save the original paper ballots. See Fla. Stat. §

101.545 (incorporating the General Records Schedule GS3 for Election Records); see also Fla. Stat. § 102.141(7)(a) (providing that machine recounts are conducted using the original paper ballots -- "marksense ballots").

On November 13, 2018, Plaintiffs sued Defendants alleging that certain Supervisors were not saving Ballot Images.  See ECF No. 1.  After the Court sua sponte denied Plaintiffs' request for expedited relief in the form of a writ of mandamus and a temporary restraining order, see ECF No. 6, Plaintiffs filed the amended complaint ("Complaint").  See ECF No. 28.[2]  Plaintiffs allege that the Supervisors were, and are, required to maintain Ballot Images in addition to the original paper ballots.  Plaintiffs allege that the State Defendants' failure to instruct and require the Supervisors to save and maintain Ballot Images violates (i) federal and state record retention laws ("Preservation Claim"), and (ii) the Fourteenth Amendment of the United States Constitution ("Constitutional Claim").

The Complaint is facially deficient.  Plaintiffs have not pled and cannot plead (or at least not in federal court) a claim for relief against the State Defendants for the Preservation Claim.  Plaintiffs lack a private enforceable right under the referenced record retention laws.  Similarly, Plaintiffs have not pled a claim for relief against the State Defendants for the Constitutional Claim.  Plaintiffs have not alleged a burden on their right to vote, have not alleged a fundamental unfairness

---

[2]     Citations to the Complaint will be made to "Comp. at ¶ __."

in election procedures, and have not alleged intentional or purposeful discrimination. For these reasons that are discussed more thoroughly below, the Complaint should be dismissed for failure to state a claim for relief against the State Defendants.

**MEMORANDUM OF LAW**

A motion to dismiss under rule 12(b)(6) tests the legal sufficiency of a pleading. Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (internal citation omitted).

**I.      Plaintiffs fail to state a claim for relief for the Preservation Claim.**

The Preservation Claim travels primarily under federal law but also references state law. Each will be addressed.

**A.      Plaintiffs fail to state a claim for relief against the State Defendants for violation of federal law.**

The only federal record retention law cited by Plaintiffs is section 20701. Section 20701 provides that:

> Every officer of election shall retain and preserve . . . all records and papers <u>which come into his possession</u> relating to any application, registration, payment of poll tax, or other act requisite to voting in such election . . . .

52 U.S.C. § 20701 (emphasis added).[3]

      (1)    <u>Section 20701 does not apply to the State Defendants.</u>

Section 20701 only requires an "officer" to retain and preserve records that "come into his possession." Conversely, section 20701 does not require an officer to affirmatively obtain records that otherwise have not come into his possession and does not require one officer to ensure compliance by another officer. Plaintiffs fail to allege that the State Defendants came into possession of Ballot Images.

Therefore, the Complaint fails to state a claim for relief against the State Defendants under section 20701.

      (2)    <u>Section 20701 does not confer a private enforceable right on Plaintiffs.</u>

Section 20701 neither creates a private right of action nor confers a private right enforceable under section 1983. <u>See</u> <u>Gonzaga Univ. v. Doe</u>, 536 U.S. 273, 285 (2002) ("§ 1983 merely provides a mechanism for enforcing individual rights 'secured' elsewhere . . . . 'One cannot go into court and claim a violation of § 1983 -- for § 1983 by itself does not protect anyone against anything.'") (internal citation omitted).

Section 20701 does not create an <u>express</u> private right of action. <u>See</u> <u>Alabama v. PCI Gaming Auth.</u>, 801 F. 3d 1278, 1294 (11th Cir. 2015) ("To determine whether a statute provides an express right of action, we look for an

---

[3]    52 U.S.C. §§ 20701-20706 were formerly 42 U.S.C. §§ 1974-1974e.

'express provision granting a federal cause of action to enforce the provisions of that act.'") (quoting <u>Smith v. Russellville Prod. Credit Ass'n</u>, 777 F. 2d 1544, 1547 (11th Cir. 1985)).  Therefore, the Preservation Claim must turn on (i) an <u>implied</u> private right of action, or (ii) the enforcement of a private right under section 1983. Both theories require a private federal right and will fail without such a right.

> [W]hether a statutory violation may be enforced through § 1983 "is a different inquiry than that involved in determining whether a private right of action can be implied from a particular statute."  But the inquiries overlap in one meaningful respect -- in either case we must first determine whether Congress <u>intended to create a federal right</u> . . . .
>
> * * *
>
> [T]he initial inquiry -- determining whether a statute confers any right at all -- is no different from the initial inquiry in an implied right of action case, the express purpose of which is to determine whether or not a statute "confers rights on a particular class of persons.

<u>Gonzaga Univ. v. Doe</u>, 536 U.S. 273, 283-85 (2002) (internal citation omitted) (emphasis in original); <u>see</u> <u>also</u> <u>PCI Gaming</u>, 801 F. 3d at 1293-94 ("It is well established that the mere 'fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person.'") (quoting <u>Cannon v. Univ. of Chicago</u>, 441 U.S. 677, 688 (1979)); <u>Martes v. Chief Executive Officer of S. Broward Hosp. Dist.</u>, 683 F. 3d 1323, 1325 (11th Cir. 2012) ("'[A] plaintiff must assert the violation of a federal <u>right</u>, not merely a violation of federal <u>law</u>.'") (citing <u>Blessing v. Freestone</u>, 520 U.S. 329, 340 (1997)) (emphasis in original).

The Supreme Court has rejected the notion that anything short of an "unambiguously conferred right" supports a right of action. Gonzaga, 536 U.S. at 283. Whether or not a statute creates a private right is a question of legislative intent, and the analysis begins and ends with the statute itself.

> For a statute to create such private rights, its text must be "phrased in terms of persons benefited." . . . [W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action.

Gonzaga, 536 U.S. at 284-85 (quoting Cannon v. Univ. of Chicago, 441 U.S. 677, 692 n.13 (1979)).

Courts look to a statute's text for "rights-creating" language. Section 20701 does not contain "rights-creating" language (or at least not rights-creating language creating and conferring new rights on Plaintiffs). "'Rights-creating language' is language 'explicitly conferring a right directly on a class of persons that includes the plaintiffs in a case or language identifying the class for whose especial [sic] benefit the statute was enacted.'" Love v. Delta Air Lines, 310 F. 3d 1347, 1352 (11th Cir. 2002) (quoting Texas & Pac. Ry. Co. v. Rigsby, 241 U.S. 33, 39 (1916)); see also PCI Gaming, 801 F. 3d at 1295 ("Rights-creating language does 'more than create a generalized duty for the public benefit, states more than declarative language, and focuses more than just on the person regulated.'") (quoting Shotz v. City of Plantation, 344 F. 3d 1161, 1167 (11th Cir. 2003));

Martes, 683 F. 3d at 1327 ("[I]n evaluating whether Congress intended to establish a federal enforceable 'right,' courts must look to whether the statute contains unambiguous 'rights-creating' language.") (quoting Arrington v. Helms, 438 F. 3d 1336, 1345 (11th Cir. 2006)).

Section 20701 identifies the class of persons being regulated but neither confers a right directly on Plaintiffs nor identifies a class of persons that includes Plaintiffs for whose special benefit it was enacted. The generalized language of section 20701 fails to demonstrate clear legislative intent that a new private right was conferred on Plaintiffs. See Alexander v. Sandoval, 532 U.S. 275, 289 (2001) ("Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'") (quoting California v. Sierra Club, 451 U.S. 287, 294 (1981)).

To the extent that section 20701 identifies any person other than those regulated, it is the Attorney General of the United States. The Attorney General is authorized to demand and compel production of the records retained under section 20701. See 52 U.S.C. §§ 20703, 20705; see also Kennedy v. Lynd, 306 F. 2d 222 (5th Cir. 1962) (discussing the Attorney General's authority to compel production of election records and papers). Notably, however, the Attorney General is prohibited from disclosing the records (except in limited circumstances which are not applicable in this case). See 52 U.S.C. § 20704. This is additional support for

the conclusion that section 20701 does not confer a private right on Plaintiffs. Namely, the person authorized to obtain records preserved under section 20701 is expressly prohibited from disclosing the records to Plaintiffs.

The State Defendants will preemptively address <u>Cort v Ash</u>, 422 U.S. 66 (1975). In support of their pending motion for preliminary injunction, Plaintiffs rely on <u>Cort</u> for the proposition that section 20701 creates a private right of action. Plaintiffs will presumably rely on <u>Cort</u> in opposition to dismissal, but such reliance is misplaced. "Later Supreme Court decisions have [] departed from the standards in <u>Cort v. Ash</u>, emphasizing that the most significant consideration is whether Congress intended a statute to create a private right or remedy." <u>Bursey v. S.C. State Election Comm'n</u>, C/A No. 3:10-1545, 2010 WL 3938390, at *3 (D.S.C. Oct. 4, 2010) (citing <u>Alexander v. Sandoval</u>, 532 U.S. 275, 286-87; <u>Touche Ross & Co. v. Redington</u>, 442 U.S. 560, 575-76 (1979); <u>Transamerica Mortgage Advisors, Inc. v. Lewis</u>, 444 U.S. 11, 18 (1979)).

After a diligent search, counsel for the State Defendants was only able to locate a single ruling concerning a private action to enforce section 20701. <u>See Bursey</u>, 2010 WL 3938390. In <u>Bursey</u>, the plaintiffs relied on <u>Cort</u> and argued that section 20701 created a private right of action. The court rejected the argument and found that section 20701 neither conferred a private right nor created a private

remedy and dismissed the complaint. Its analysis is persuasive and consistent with the foregoing authority.

Therefore, the Complaint fails to state a claim (and is incapable of stating a claim) for relief against the State Defendants under section 20701.

**B.      Plaintiffs fail to state a claim for relief against the State Defendants for violation of state law.**

Plaintiffs' reliance on state law for the Preservation Claim is also a dead end. It makes no difference whether Plaintiffs' theory is to enforce Florida record retention laws or Florida law designating the Secretary as the chief election officer.

(1)      The Eleventh Amendment bars enforcement of state law claims against the State Defendants.

Plaintiffs sued the State Defendants in their official capacities as state officials. To the extent Plaintiffs seek to enforce state law, the Preservation Claim (as distinct from the Constitutional Claim) is barred by the Eleventh Amendment.

Federal courts have long recognized that state officials are immune from state law claims brought against them in their official capacity because the Ex parte Young doctrine does not reach such claims. The Supreme Court has explained that the rationale for the Ex Parte Young doctrine "rests on the need to promote the vindication of federal rights," but in a case alleging that a state official has violated state law, this federal interest disappears. State officials are immune from suit in federal court for claims arising under state law because "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law."

PCI Gaming, 801 F. 3d at 1290 (citing Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga., 633 F. 3d 1297, 1305 n. 15 (11th Cir. 2011) and quoting Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 105-06 (1984)) (emphasis added); see also Doe v. Bush, 261 F. 3d 1037, 1055 (11th Cir. 2001) ("[F]ederal courts do not have authority to compel state actors to comply with state law.").

> (2)    The state record retention laws do not apply to the State Defendants.

Plaintiffs cite section 101.545 (which incorporates the record retention schedule approved by the Florida Department of State). Section 101.545 regulates and imposes record retention obligations on the Supervisors.

> All ballots, forms, and other election materials shall be retained in the custody of the supervisor of elections in accordance with the schedule approved by the Division of Library and Information Services of the Department of State . . . .

Fla. Stat. § 101.545 (emphasis added). By its plain language, the State Defendants are not subject to section 101.545.

Plaintiffs also reference chapter 119. Chapter 119 codifies the Florida Public Record Act and governs the handling of state, county, and municipal records in Florida, but it does not render either of the State Defendants a custodian of records for Ballot Images. Namely, chapter 119 defines the custodian of records as "the elected or appointed state, county, or municipal officer charged with the

responsibility of maintaining the office having public records, or his or her designee." Fla. Stat. § 119.011(5). But again, it is the Supervisors, not the State Defendants, that are charged with the responsibility of maintaining Ballot Images. <u>See</u> Fla. Stat. § 101.545.

Therefore, the Complaint fails to state a claim (and is incapable of stating a claim) for relief against the State Defendants under the aforementioned state laws.

(3)    <u>Section 97.012 does not create a private right of action.</u>

Finally, it appears that the Preservation Claim against the Secretary is based on the Secretary's alleged failure to perform his duties as the "chief election officer" of the state. <u>See</u> Fla. Stat. § 97.012. First and foremost, the Eleventh Amendment bars a federal court from compelling the Secretary to comply with section 97.012 absent a constitutional violation. <u>See</u> <u>PCI Gaming</u>, 801 F. 3d at 1290. But putting aside the Eleventh Amendment, section 97.012 does not create a private right of action.[4]

Section 97.012 does not create an <u>express</u> private right of action. And an <u>implied</u> private right of action to enforce a Florida statute, like a federal statute, is a question of legislative intent. "Legislative intent in this context is a 'shorthand reference to the ordinary tools for discerning statutory meaning: text, context, and

---

[4]    The Court need not consider enforcement of section 97.012 under section 1983 because section 1983 is only available to remedy a violation of a <u>federal</u> right. <u>See</u> <u>Harris v. Jones</u>, No. 4:18-cv-198, 2018 WL 3999849, at *1 (N.D. Fla. July 16, 2018).

purpose.'" QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc., 94 So. 3d 541, 551 (Fla. 2012) (internal citation omitted); see also Sapuppo v. Allstate Floridian Ins. Co., No. 4:12-cv-382, 2013 WL 6925674, at *5 (N.D. Fla. Mar. 12, 2013) ("QBE comes close to holding that 'courts cannot provide a remedy when the Legislature has failed to do so. At the very least, QBE sets a high bar for implying a private right of action.").

As to the text, nowhere in section 97.012 does it identify a class of beneficiaries or use language suggesting that it is enforceable by a private right of action. See QBE, 94 So. 3d at 551 ("The primary guide in determining whether the Legislature intended to create a private cause of action is the 'actual language used in the statute.'") (internal citation omitted). "Absent such an expression of intent, a private right of action is not implied." Villazon v. Prudential Health Care Plan, Inc., 843 So. 2d 842, 852 (Fla. 2003).

As to the context, section 97.012 is part and parcel of the Florida Election Code. In enacting the Florida Election Code, the legislature created penalties for violating its provisions. See Fla. Stat. ch. 104 (Election Code: Violations; Penalties). But the Florida Election Code does not provide for a private right of action for an alleged violation of section 97.012. Absent clear legislative intent to the contrary, remedies sought for an alleged statutory violation are limited to

those specified by statute.  See Curtis v. City of West Palm Beach, 82 So. 3d 894, 895 (4th DCA 2011).

Therefore, the Complaint fails to state a claim (and is incapable of stating a claim) for relief against the State Defendants under section 97.012.

## II. Plaintiffs fail to state a claim for relief against the State Defendants for the Constitutional Claim.

The Constitutional Claim travels under the Fourteenth Amendment.

> Although federal courts closely scrutinize state laws whose very design infringes on the rights of voters, federal courts will not intervene to . . . supervise the administrative details of a local election. Only in extraordinary circumstances will a challenge to a state election arise to the level of a constitutional deprivation.

Curry v. Baker, 802 F. 2d 1392, 1314 (11th Cir. 1986).  As pled, Plaintiffs do not allege the infringement of a protected right, much less an infringement that rises to the level of a constitutional deprivation.

### A. Plaintiffs fail to state a claim for relief against the State Defendants for violations of a right to a fair and accurate election.

Plaintiffs allege a "fundamental interest in having fair and accurate elections," Comp. at ¶ 58, and that the failure to retain and maintain Ballot Images infringes on their "right to a fair and accurate election," Comp. at ¶ 6.  Yet Plaintiffs fail to articulate facts from which to discern their legal theory under the Fourteenth Amendment.  Counsel for the State Defendants did its own research and located law for the proposition that the Due Process Clause of the Fourteenth

Amendment may be implicated if "the election process itself reaches the point of patent and fundamental unfairness," but that same law makes clear that such a situation requires circumstances well beyond ordinary election disputes. Curry v. Baker, 802 F. 2d 1392, 1315 (11th Cir. 1986).

Plaintiffs' allegations on this point amount to legal conclusions, not well-pled facts. Plaintiffs do not allege facts supporting an inference that the election process is, or was, "patently and fundamentally unfair." Similarly, Plaintiffs do not allege facts supporting an inference that election outcomes were inaccurate or will likely be inaccurate in the future or that a failure to maintain Ballot Images will cause an inaccurate outcome. Again, the Supervisors are required by law to save and maintain the original voted ballots, see Fla. Stat. § 101.545 (incorporating the General Records Schedule GS3 for Election Records), and it is the original voted ballots that are used for a recount, see Fla. Stat. § 102.141(7)(a). It is the original voted ballots, not Ballot Images, which are the best evidence of voter intent and the election results.

Therefore, the Complaint fails to state a claim for relief against the State Defendants based on their "fair and accurate election" theory under the Fourteenth Amendment.

**B.** **Plaintiffs fail to state a claim for relief against the State Defendants for violations of their right to equal protection.**

Plaintiffs allege that the disparate treatment of Ballot Images violates their rights under the Equal Protection Clause of the Fourteenth Amendment. <u>See</u> Comp. ¶¶ 5, 49, 59-60.[5]

Notably, Plaintiffs do not allege that the law or its application burdened their right to vote at any stage in the election process: neither registering to vote; nor casting a vote; nor counting and weighing votes. Therefore, this is not a voting rights case, and the often cited balancing test for voting regulations should not be applied.

Plaintiffs likewise do not identify an allegedly unconstitutional law. The referenced laws are facially neutral, and Plaintiffs do not allege anything to the contrary. Instead, Plaintiffs allege that the State Defendants' failure to affirmatively instruct and enforce record retention laws against the Supervisors results in a "dual system" for retaining Ballot Images that violates the Equal Protection Clause. <u>See</u> Comp. at ¶ 49. Thus, it is the disparate impact resulting from the State Defendants' <u>uniform</u> guidance and deference to the Supervisors that is the subject of the equal protection analysis.

---

[5] To the extent that Plaintiffs suggest the disparate treatment of Ballot Images in and of itself implicates the Fourteenth Amendment, they are mistaken. The Fourteenth Amendment protects natural persons, not Ballot Images. <u>See</u> U.S. Const. amend. XIV, § 1.

At the heart of every equal protection claim is intentional or purposeful discrimination. Claims based on an inconsistent or unlawful administration of state law are no different.

> The unlawful administration by state officers of a non-discriminatory state law, "resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination."

Gamza v. Aguirre, 619 F. 2d 449, 453 (5th Cir. 1980) (quoting Snowden v. Hughes, 321 U.S. 1, 8 (1944)) (emphasis added);[6] see also Parks v. City of Warner Robins, Ga., 43 F. 3d 609, 617 (11th Cir. 1995) ("Assuming arguendo that [plaintiff] Parks has demonstrated disparate impact, her equal protection claim must still fail for lack of a showing of discriminatory intent."); E & T Realty v. Strickland, 830 F. 2d 1107, 1113 (11th Cir. 1987) ("Unequal administration of facially neutral legislation can result from either misapplication (i.e., departure from or distortion of the law) or selective enforcement (i.e., correct enforcement in only a fraction of cases). In either case, a showing of intentional discrimination is required.").

Plaintiffs allege that the unlawful administration of the law has resulted and will continue resulting in its unequal application. However, Plaintiffs do not allege that the State Defendants' alleged unlawful administration includes an element of

---

[6]    See Bonner v. City of Prichard, Ala., 661 F. 2d 1206 (11th Cir. 1981).

intentional or purposeful discrimination and do not allege facts from which intentional or purposeful discrimination can be inferred. Rather, <u>the factual allegations of the Complaint are that the State Defendants treated everyone equally</u>. <u>See</u> Comp. at ¶¶ 2, 5-6, 49, 54, 60.

Without allegations demonstrating an element of intentional or purposeful discrimination by the State Defendants, the Complaint fails to state a claim for relief against the State Defendants based on a violation of the Equal Protection Clause. <u>See</u> <u>PG Pub. Co. v. Aichele</u>, 705 F. 3d 91, 115 (3d Cir. 2013) ("To maintain its equal protection claim, Appellant must show not only that the administration of § 3060(d) has resulted in 'unequal application to those who are entitled to be treated alike,' but also that there is 'an element of intentional or purposeful discrimination' present. Here, we find that Appellant has failed to set forth the necessary allegations . . . . [W]e see no sign of 'clear and intentional discrimination.'") (quoting <u>Snowden v. Hughes</u>, 321 U.S. 1 (1944)); <u>Baker v. City of Alexander City, Ala.</u>, 973 F. Supp. 1370, 1375-76 (M.D. Ala. 1997) ("'[A] discriminatory purpose is not presumed[;] there must be a showing of clear and intentional discrimination.' . . . Plaintiff asserts that once he has established dissimilar treatment the burden is on the government to offer a rational basis for the distinction . . . . Plaintiff's framework for equal protection analysis is flawed. In order to substantiate his claim that he was denied equal protection of the law,

the Plaintiff must also establish that the Defendants acted with discriminatory intent . . . . [T]he Equal Protection Clause does not provide the authority to review every allegedly arbitrary or unlawful state act for constitutional error.") (quoting Snowden).

Finally, even assuming the balancing test for voting regulations applies, Plaintiffs fail to state a claim for relief against the State Defendants. Plaintiffs essentially argue that all voting systems using Digital Scanners must be uniform in their retention of Ballot Images, but the Eleventh Circuit has already rejected an argument for uniformity in voting systems. See Wexler v. Anderson, 452 F. 3d 1226 (11th Cir. 2006).

In Wexler, for example, the court framed the constitutional question as whether a voter is less likely to cast an effective vote under one voting system compared to another. The court thereafter explained that "local variety in voting systems can be justified by concerns about cost, the potential value of innovation, and so on." Wexler, 452 F. 3d at 1233 (internal quotation and citation omitted).

Here, Plaintiffs have not alleged that voters in counties that do not retain Ballot Images are less likely to cast an effective vote than voters in counties that do retain Ballot Images. For reasons beyond the scope of the pleadings and the Court's review at this stage, the retention of Ballot Images is irrelevant to casting effective votes, and the state's interest in marshalling resources and deferring the

management of election to the Supervisors justifies any tenuous burden that may arise. Nevertheless, because Plaintiffs fail to allege a burden on their right to vote (and an absence of a state interest for any such burden), the Complaint fails to state a claim for relief against the State Defendants for violation of their right to vote as well.

## CONCLUSION

The Complaint fails to state a claim for relief against the State Defendants under either claim. Therefore, the Complaint should be dismissed in its entirety. Because amendment of the Preservation Claim would be futile, the Preservation Claim should be dismissed <u>with prejudice</u>.

Wherefore, Defendants, Laurel M. Lee, in her official capacity as the Secretary of the Florida Department of State, and Maria Matthews, in her official capacity as the Director of the Florida Division of Elections, request that the Court grant the motion to dismiss and enter an order:

(i)     Dismissing with prejudice Plaintiffs' First Claim for Relief;

(ii)    Dismissing Plaintiffs' Second Claim for Relief; and

(iii)   Awarding such further relief the Court deems just and proper.

Respectfully submitted this 12th day of February, 2019.

/s/ *Anthony L. Bajoczky, Jr.*
Erik M. Figlio
Florida Bar No.: 0745251
Anthony L. Bajoczky, Jr.
Florida Bar No.: 0096631
Ausley & McMullen, P.A.
123 South Calhoun Street (32301)
Post Office Box 391
Tallahassee, Florida  32302
Phone No.:  (850) 224-9115
rfiglio@ausley.com
tbajoczky@ausley.com
csullivan@ausley.com

Bradley R. McVay
Florida Bar No.: 79034
Ashley E. Davis
Florida Bar No.: 48032
Florida Department of State
R.A. Gray Building, Suite 100
500 South Bronough Street
Tallahassee, Florida 32399
Phone No.: (850) 245-6536
brad.mcvay@dos.myflorida.com
ashley.davis@dos.myflorida.com

Attorneys for Defendants
Laurel M. Lee and Maria Matthews

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

I certify that this motion contains 4,678 words.

*/s/ Anthony L. Bajoczky, Jr.*
ANTHONY L. BAJOCZKY, JR.


## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been filed electronically via the CM/ECF System on this 12th day of February, 2019.

/s/ *Anthony L. Bajoczky, Jr.*
ANTHONY L. BAJOCZKY, JR.