UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION
CASE NO. 4:18cv529-MW/CAS

**MIKE FOX, et al.,**
    *Plaintiffs*,

versus

**LAUREL M. LEE, in her official capacity as
Secretary of the Florida Department of State, et al.,**
    *Defendants*.
_____/

# PLAINTIFFS' CONSOLIDATED RESPONSE IN OPPOSITION TO MOTIONS TO DISMISS (DE77&78)

Plaintiffs, all State of Florida voters, seek declaratory and injunctive relief status against Florida Supervisors of Elections ("SOE") and the State of Florida Secretary of State and Director of the Division of Elections ("SOF"), asserting that elections officials did not maintain and preserve the electronic ballot images automatically created by digital ballot scanners used throughout Florida (DE28). The failure to preserve these digital images is flatly contrary to the mandate of 52 U.S.C. §20701 (and also violates Chapter 119, Florida Statutes relating to access to public records). Plaintiffs' federal question jurisdiction arises under 28 U.S.C. § 1331.

The defendants moved to dismiss plaintiffs' complaint (DE77 & DE78) on the grounds that: (1) 52 U.S.C. §20701 does not create a private right of action; (2) the court lacks original jurisdiction under 42 U.S.C. §1983 (and should therefore

decline to exercise supplemental jurisdiction over the state law claim); and (3) the plaintiffs lack standing to assert claims against certain defendants because they are not voters in Congressional Districts within those defendants' jurisdictions. Because plaintiffs are authorized to compel their elections officials to preserve ballot materials, dismissal of the complaint is unfounded.

I. **PLAINTIFFS ARE ENTITLED TO BRING AN ACTION TO ENFORCE 52 U.S.C. § 20701.**

Whether a statute creates a private cause of action is a question of statutory construction. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 192 (2005). The statute must create a right which "must be phrased in terms of the person benefited" or must have an "unmistakable focus on the benefited class". *Gonzaga Univ. v. Doe*, 536 U. S. 273, 284 (2002). The violation of a federal law resulting in measurable harm "does not automatically give rise to a private cause of action in favor of that person." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979). The controlling question is whether the statute is intended to benefit a class of people that includes the plaintiffs. *Jackson*, 544 U.S. at 194.

If the subject statute does not expressly create a private right of action, courts utilize a four-prong test to determine whether a statute includes such a private right of action. *Cort v. Ash*, 422 U.S. 66 (1975). These factors are: (1) whether the plaintiff is one of the class for whose benefit the statute was enacted; (2) whether an indication exists of legislative intent, explicit or implicit, either to create or to deny

a private remedy; (3) whether implying a private right of action is consistent with the underlying purposes of the legislative scheme; and (4) whether the cause of action is one traditionally relegated to state law such that it is inappropriate for the court to infer a cause of action based solely on federal law. *Cort*, 422 U.S. at 78.

In the words of 52 U.S.C. §20701:

> Every officer of election shall retain and preserve, for a period of twenty-two months from the date of any general, special, or primary election of which candidates for the office of President, Vice President, presidential elector, Member of the Senate, Member of the House of Representatives, or Resident Commissioner from the Commonwealth of Puerto Rico are voted for, all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election . . . . Any officer of election or custodian who willfully fails to comply with this section shall be fined not more than $1,000 or imprisoned not more than one year, or both.

When punishment in the form of a fine is imposed for violation of a statute, as distinguished from a civil remedy, the offense is criminal in nature. *United States v. Krapf*, 180 F.Supp. 886, 890 (D.C.N.J.1960), *aff'd.*, 285 F.2d 647 (3rd Cir. 1961).

A private right of action does not automatically flow from a criminal statute but, where it arises, "there was at least a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone." *Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979) (citing *Wyandotte Transp. Co. v. United States*, 389 U.S. 191 (1967); *J. I. Case Co.v. Borak*, 377 U.S. 426 (1964); *Texas & Pacific R. Co. v. Rigsby*, 241 U.S. 33 (1916)). It cannot be said that a criminal statute is never

"sufficiently protective of some special group so as to give rise to a private cause of action". *Cort v. Ash*, 422 U.S. at 80.

Congress has declared that "the right of citizens of the United States to vote is a fundamental right", and that "it is the duty of the Federal, State, and local governments to promote the exercise of that right". *Project Vote, Inc. v. Kemp*, 208 F.Supp.3d 1320, 1324 (N.D. Ga. 2016). To this end, Congress has determined that the purpose of legislation promoting such rights and duties "enhances the participation of eligible citizens as voters in elections for Federal office", "protect[s] the integrity of the electoral process", and "ensure[s] that accurate and current voter registration rolls are maintained". *Project Vote*, 208 F.Supp.3d at 1324.

"No right is more precious in a free country than that of having a voice in the election of those who make the laws…. Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964). The right to vote necessarily includes "the right of voters within a state to cast their ballots and have them counted." *United States v. Classic*, 313 U.S. 299, 315 (1941). Essential to the preservation and protection of this right to vote is the concomitant right to have the voting materials preserved for considerations of transparency and accuracy. The destruction and non-preservation of essential election materials undermines the individual guarantee of the right to vote. Plaintiffs' effort to protect and preserve that right is at the core of our democracy, and goes to the heart of the

right to vote and have those votes counted accurately.

It is apparent that Congress specifically enacted §20701 to protect and preserve the rights of voters as an identifiable class. This requirement to preserve election materials was originally implemented as a part of the Civil Rights Act of 1960, in order to ensure that elections officials maintain the integrity of the elections apparatus. The purpose of that Act was "to secure a more effective protection of the right to vote." *State of Alabama ex rel. Gallon v. Rogers*, 187 F.Supp. 848 (N.D. Ala. 1960), *aff'd.*, 285 F.2d 430 (5th Cir. 1961), *cert. denied*, 366 U.S. 913 (1961). A private right of action is not only consistent with these purposes, but its exclusion is inconsistent with the right of voters to preserve and protect the sanctity and accuracy of the right to vote. Congress has not expressly denied voters a private remedy to secure their voting apparatus and materials essential to the exercise of the right to vote. While a state's obligation to implement and oversee elections is "particularly potent" regarding rules and regulations that ensure the integrity of elections, even to federal office, the power of Congress over federal elections is paramount and may be exercised at any time and to any extent it deems expedient. *True the Vote v. Hosemann*, 43 F.Supp.3d 693, 730-731 (S.D. Miss. 2014).

The four-prong test in *Cort* establishes the foundation for §20701's creation of a private right of action. Plaintiffs, as Florida voters in congressional district elections, seek to ensure the protections created by the statute's command to

preserve ballot materials. This citizen-enabled enforcement is entirely consistent with the legislative purpose to protect and promote the integrity of the vote and make available to means to accurately verify the outcome of federal elections. The elections to which the statute refers, and those applicable here involve at a minimum a federal congressional election for U.S. Senate. Congress has not evidenced any intention of denying enforcement of this preservation requirement to federal voters.

The district court decision in *Bursey v. South Carolina Election Commission*, 2010 WL 3938390 (D.S.C. October 4, 2010), is not controlling here and should not be relied on by this court. That court rejected the *pro se* defendant's action seeking to enjoin the erasure of state voting machine records, finding that 42 U.S.C. § 1974 did not create a private cause of action. Contrary to that court's conclusion, the plaintiffs' enforcement of the federal elections material preservation requirement is consistent with the statutory purpose of protecting the integrity, sanctity, and transparency of federal elections, and is equally compatible with Florida's broad public records requirement to preserve elections materials. Florida's inconsistent preservation of electronic ballot images by various SOEs is precisely the concern that the statute is intended to reach, and is reason enough to promote enforcement by affected electors. The plaintiffs' private right of action is entirely compatible with and arises from the very need to institutionalize the preservation of elections materials as a way of promoting elections transparency that will assure the viability

and dependability of the electoral process.

In conclusion on this point, plaintiffs are entitled to seek enforcement of the statutory mandate by bringing their cause of action. Even if the Court were to conclude that the statute gives no private right of action to the plaintiffs, a position with which the plaintiffs disagree, plaintiffs' constitutional equal protection claim provides an adequate basis upon which to deny dismissal of the complaint.

## II. VIOLATION OF A FEDERAL RIGHT.

42 U.S.C. §1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

While Section 1983 does not itself create enforceable rights, it "provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 394 (1989).

To seek redress through §1983, a plaintiff must assert the violation of a federal right, not merely a violation of federal law. *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 106 (1989). Three factors determine whether a particular statutory provision gives rise to a federal right:

> First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the

> right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

*Blessing v. Freestone*, 520 US 329, 340 (1997) (citations omitted).

Congressional enactment of §20701 protects and preserves the rights of voters by guaranteeing the integrity and transparency of the electoral process. The absolute directive to retain all records relating to every application, registration, payment or other act requisite to voting in an election is unambiguous. It is directed in mandatory terms with no exceptions. This mandate gives rise to a federal right that can be vindicated by the voters under §1983.

The electronic ballot images to which the complaint is addressed are automatically created when the digital scanners read and count the digital images of the ballots. The digital ballot images are an automatic part of the election chain of custody that begins when a voter initiates the casting of a ballot, and is used to tabulate the ballot on the digital scanning machines. The election chain of custody that is protected by federal law continues through the transfer and storage of these electronic images, together with all other election materials. Preserving both the voted paper ballots and the digital ballot images is analogous to preserving duplicated ballots made by election officials. The preservation of these ballot images, among all other elections materials, preserve and protect the integrity and

transparency of our elections that are at the core of our constitutional right to vote.

The decision in *Gonzaga University v. Doe*, 536 U.S. 273 (2002), does not hold to the contrary. That suit sought to invoke the protections of the Family Educational Rights and Privacy Act of 1974 (FERPA), 20 U.S.C. § 1232g, that prohibits the federal funding of schools that have a policy or practice of permitting the release of student educational records without parental consent. Because the statute was addressed to federal funding of educational institutions, the statute did not confer specific monetary entitlements on individual students, and created no individually focused rights. Therefore, individual students lacked the ability to enforce the Act's confidentiality provisions.

By way of contrast here, the federal elections preservation requirement does not derive from spending legislation or a monetary entitlement. Instead, it is directed to promote the protection and transparency of the individual right to vote. Election transparency is essential to preservation of the right to vote, and necessarily impacts and encompasses the constitutional right to vote, a protection that is voter-specific and not institutionally directed. As such, the right protected by the federal elections preservation requirement, is entitled to be enforced by voters, whose voting rights are adversely impacted by Florida's failure to consistently and uniformly maintain and preserve essential elections materials.

The actionable inconsistency in Florida's application of digital ballot

preservation, with some SOEs preserving digital ballot images while others ignore that obligation, raises legitimate Fourteenth Amendment due process and equal protection concerns that give rise to a significant foundation for the exercise of this Court's authority. Plaintiffs and all Florida voters are subjected to disparate treatment in ballot preservation at the whim of SOE officials. This discrepancy among SOEWs effectively values one person's ballot integrity and transparency over that of another by arbitrary application of the preservation requirement. This disparate treatment fails to afford even rudimentary considerations of fundamental fairness to the plaintiffs and all Florida voters. As the Supreme Court recognized in Bush v. Gore, 531 U.S. 98, 108-110 (2000), disparate treatment in the handling of the voting machinery violates considerations of due process and equal protection. Plaintiffs are fully able to assert this constitutional violation in the face of the SOEs arbitrary and capricious handling of digital ballot images.

Plaintiffs, as eligible and participating electors, are entitled to seek the preservation, protection, and transparency of their elections machinery.

## III. PLAINTIFFS HAVE STANDING TO ENFORCE THE PROTECTIONS OF 52 U.S.C. §20701.

A party claiming standing under Article III must have "suffered an injury in fact." *Spokeo v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S. Ct. 2130 (1992)). To establish an injury in fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected

interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical'." *Spokeo*, 136 S. Ct. at 1547 (quoting *Lujan*, 504 U.S. at 560, 112 S. Ct. at 2136). The concreteness requirement may be satisfied by "the risk of real harm." *Spokeo*, 136 S. Ct. at 1549.

In this instance, plaintiffs' concrete injury is directly caused by the defendants' failure to comply with the congressional mandate to preserve ballot materials, including the scanned digital ballot images automatically created by the elections scanning equipment. The amended complaint states (DE28, p. 14):

> Florida elections supervisors or staff members under their supervision in most Florida counties have been allowing and allowed the destruction of ballot images in the 2018 general election by the decision to not select the recommended option to preserve "All Processed Images." By failing to set voting machines to preserve "All Processed Images," the SOEs are destroying the ballot images rather than exporting them to the server for storage and preservation. Ballot images left on the voting machine hard drives that are not preserved are eventually written over or cleared by elections staff.

The complaint also states (DE28, p. 16):

> The state defendants' refusal to instruct SOEs to preserve ballot images allows those local officials to determine for themselves whether to preserve or destroy ballot images. As a result, a dual system has developed in which some election officials throughout Florida and within each of Florida's twenty-seven (27) Congressional Districts preserve ballot images while others within Florida and even the same Congressional Districts choose to destroy the ballot images.

These allegations set forth facts demonstrating a clear and obvious risk of real harm to the integrity of the electoral process, thereby jeopardizing the right to vote

of these plaintiffs and all other electors. Plaintiffs are voters who actually cast Florida ballots for the 2018 Florida statewide congressional elections, and whose electronic ballot images are required to be preserved by federal statute. Plaintiffs' standing is consistent with this court's finding of standing in *Democratic Executive Committee of Florida v. Detzner*, U.S.D.C. Case No. 4:18-cv-00520, 347 F.Supp.3d 1017, 1024 – 1025 (N.D. Fla. November 15, 2018), *stay denied*, __ F.3d __, 2019 WL 638722 (11th Cir. February 15, 2019) (standing of Democratic Party to protect and enforce counting of vote-by-mail ballots supported by affidavits of voters whose ballots were rejected for mismatched signatures).

The decision in *Citizen Center v. Gessler*, 770 F.3d 900, 917-919 (10th Cir. 2014), contrary to its treatment by the SOE defendants (DE77, n. 2), is indicative of the plaintiffs' standing here. In *Gessler*, a not-for-profit organization sued the Colorado Secretary of State and five county clerks for violating its members' federal constitutional rights arising from the use of voter-specific traceable ballots. Concluding that unequal treatment among voters gave rise to constitutionally valid equal protection and due process claims against the Colorado Secretary of State, *id*. at 913-914, the court separately determined that the equal protection argument did not apply to the county clerks because all voters within the same county were treated the same. *Id*. at 917-918.

The ballot preservation issue presented by the plaintiffs here is significantly

different because the election materials in question pertain to a statewide U.S. Senate race for which the applicable jurisdictional reach is the entire State of Florida. The disparate treatment of voters' elections records by different SOEs impacts the statewide election by treating voters in the same election differently. Additionally, because voters for Florida's individual congressional district elections cross county lines and therefore depend on different SOEs in the same election, the ballot materials for different voters in the same election are treated differently by the different SOEs, without any founded reason for the disparate treatment. Thus, the plaintiffs and the elections in which they participated are disadvantaged by the dissimilar application of the preservation requirement in the same statewide and congressional district elections, all in violation of the guarantee of equal protection.

Since the State of Florida, through the actions (and inactions) of the Florida defendants and the SOEs, created a hodge-podge of some counties preserving and other counties not preserving electronic ballot images within the same federal elections jurisdictions, plaintiffs are entitled to insist that all Florida SOEs comply with the federal preservation mandate that is applicable to every voting jurisdiction conducting Florida's federal-candidate elections. Because the plaintiffs here voted in Florida's statewide election for a statewide federal candidate (U.S. Senate) and congressional candidates, they each have standing to protect the voters' right to ballot integrity and transparency.

The SOE defendants attempt to minimize the vital role of electronic ballot images by inaccurately referring to them as "duplicates maintained on electronic tabulation machines utilized by the SOE Defendants …" (DE77, p. 3). As explained in the complaint, the electronic ballot images are not mere duplicates. They are in fact the means by which the voting tabulation machines actually count the votes (DE28, ¶42). The paper ballots created by the voters are actually scanned, and the electronic images automatically created by the scanning equipment are the actual "source documents" in the chain of custody to count the votes. Even during the mandatory machine recount for Florida's U.S. Senate race, the electronic ballot images were tabulated to determine the actual votes cast.[1]

The SOEs dispute the ability of plaintiffs to bring an action against SOEs outside their congressional districts (DE77, p. 15), contending they are not voters in congressional districts impacting some of the named SOEs. The election to which this lawsuit is based, however, is a statewide election for U.S. Senate, in which the plaintiffs individually and collectively have the right to vote and an interest in the accuracy of that electoral outcome. Every SOE in the State of Florida, and all named SOEs, participated in that statewide Senate election, and preservation of all ballot images throughout Florida is essential to implement the protections of the

---

[1] Contrary to the statement by the SOEs in footnote 3 (DE77), the electronic digital ballot images have no relationship to "touch screen voting," but are instead imaged ballots that are used to tabulate the actual vote.

preservation requirement. The failure of any and every SOE to preserve electronic digital images for the election that included the statewide U.S. Senate race affects each plaintiff and every Florida voter who participated in the election. That statewide discrepancy is the very underpinning of plaintiffs' constitutional equal protection claim that stands as a separate and independent basis for federal court jurisdiction. Plaintiffs each have a particularized injury in that the transparency and accuracy of their participation in the statewide congressional election is impacted by the failure of Florida's elections officials to preserve and maintain all electronic ballot images. *See Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013) (plaintiff must show "concrete and particularized injury that is fairly traceable to the challenged conduct …").

**IV.  SUPPLEMENTAL JURISDICTION.**

Section 101.545, Florida Statutes, provides that "[a]ll ballots, forms, and other election materials shall be retained in the custody of the supervisor of elections in accordance with the schedule approved by the Division of Library and Information Services of the Department of State." According to 28 U.S.C. §1367(a):

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Once a claim has been stated that has sufficient substance to confer subject-matter jurisdiction on a federal district court, that court possesses the judicial power

to consider a state law claim if it and the federal claim are derived from "a common nucleus of operative fact". *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365. 378-379 (1978). That is the case here, where the plaintiffs' federal claims pursuant to 52 U.S.C. §20701 are based on the very same factual basis common to the state law claims asserted under §101.545, Florida Statutes. Therefore, the court appropriately has supplemental jurisdiction over the state law claims pursuant 28 U.S.C. §1367(a), and should exercise that authority in the interests of justice.

The SOF defendants inaccurately assert they have no Florida preservation requirement that can be enforced by this Court (DE78, p. 1), despite the fact that Florida squarely places oversight of all elections with the Florida Secretary of State and the Florida Division of Elections. Amended Complaint ¶2; Fla. Stat. §§ 102.141, 102.166. The Florida officials maintain statewide elections records, but have not carried out their duties to instruct Florida's Supervisors of Elections to preserve all ballot materials for twenty-two (22 months) following the federal election. These same Florida officials have not accurately instructed the SOEs to preserve digital ballot images created by digital voting machines used throughout the State of Florida. They are, accordingly, properly subject to this Court's supplemental jurisdiction.

## V.   CONCLUSION.

Plaintiffs ask this Court to deny dismissal of the Amended Complaint.

Alternatively, plaintiffs should be given an opportunity to re-plead.

## VI. CERTIFICATE OF COMPLIANCE.

Pursuant to Rule 7.1(F) of the Local Rules of the Northern District of Florida, this submission is certified by counsel to contain 3,998 words.

## VII. REQUEST FOR ORAL ARGUMENT.

Pursuant to Local Rule 7.1(K), plaintiffs seek oral argument on this matter, and join with the defendants in requesting two (2) hours for that purpose.

Respectfully submitted on February 27, 2019.

| | |
|---|---|
| *S/ Benedict P. Kuehne* | *S/ Carl Christian Sautter* |
| **BENEDICT P. KUEHNE** | **CARL CHRISTIAN SAUTTER** |
| **KUEHNE DAVIS LAW, P.A.** | 3623 Everett Street NW |
| Miami Tower, Suite 3550 | Washington, DC 20008 |
| 100 S.E. 2 Street | Indiana Bar No. 45-53 |
| Miami, FL 33131-2154 | *Pro Hac Vice* |
| Florida Bar No. 233293 | Tel: 202-285-7560 |
| Tel: (305) 789-5989 | sauttercom@aol.com |
| Fax: (305) 789-5987 | |
| ben.kuehne@kuehnelaw.com | |
| efiling@kuehnelaw.com | |

## **CERTIFICATE OF SERVICE**

I certify that on February 27, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the CM/ECF and transmitted in accordance with CM/ECF requirements.

*S/ Benedict P. Kuehne*
**BENEDICT P. KUEHNE**